STATE OF NORTH CAROLINA v. ANTIONE DENARD ALLEN

No. COA02-1624

(Filed 17 February 2004)

## 1. Homicide— premeditation and deliberation—evidence sufficient

There was sufficient evidence for a jury to find premeditation and deliberation in a first-degree murder prosecution where defendant played a critical role in developing a robbery plan; armed himself with an assault rifle as part of that plan; provided transportation and directions for others to the victim's apartment; entered the apartment with no attempt to conceal his weapon; and was in the apartment only a brief time before the victim was shot.

## 2. Evidence— hearsay—excited utterance exception

Testimony relating statements made to an officer by two witnesses to a robbery and shooting were admissible as excited utterance exceptions to the hearsay rule. The statements were made twenty minutes after the shooting, both witnesses were upset, and the arrival of the Spanish-speaking officer gave the witnesses their first opportunity to tell what they had seen. N.C.G.S. § 8C-1, Rule 803(2).

## 3. Evidence— hearsay—unavailable witness

The trial court correctly deemed unavailable a witness who would not return from Mexico, and the six prongs of the inquiry required by N.C.G.S. § 8C-1, Rule 804(b)(5) were satisfied.

## 4. Constitutional Law— Confrontation Clause—unavailable witness—independent assessment of trustworthiness

The Court of Appeals conducted an independent assessment of the trustworthiness of a statement by an unavailable witness and concluded that admission of the statement was consistent with the Confrontation Clause.

## 5. Evidence— character of victims—not placed in issue by defendant—evidence not prejudicial

Admission of testimony about the character of homicide victims before defendant called their character into issue was not prejudicial in light of the overwhelming evidence against defendant.

STATE v. ALLEN

[162 N.C. App. 587 (2004)]

## 6. Appeal and Error— preservation of issues—constitutional issue not raised at trial—no offer of proof

Defendant waived appeal of limits on his cross-examination of witnesses by not raising constitutional issues at trial and or making an offer of proof.

## 7. Criminal Law— flight—evidence sufficient

There was sufficient evidence for an instruction on flight where defendant fled the scene of a robbery and shooting, going first to the apartment of an acquaintance, then calling a cab to go to a cousin's home and later to his home; he stayed there overnight, but left for a friend's home in a near-by town after hearing that a child had died; and he remained at the friend's home for two days before returning to speak with police.

## 8. Appeal and Error— prosecutor's argument—no objection or plain error assertion

A defendant waived appeal of the State's argument about his exercise of his right to remain silent by not specifying grounds for his sole objection, raising his constitutional concerns at the trial court, or asserting plain error.

## 9. Criminal Law— prosecutor's argument—plea bargain with accomplices

There was no plain error in the prosecutor's argument about the State's plea bargain with a first-degree murder defendant's accomplices. The argument did not intimate an opinion on the witness's credibility by the trial court or the Supreme Court.

## 10. Homicide— first-degree murder—short-form indictment—constitutional

The short-form indictment for first-degree murder is constitutional.

Appeal by defendant from judgment dated 1 March 2002 by Judge Melzer A. Morgan, Jr. in Superior Court, Forsyth County. Heard in the Court of Appeals 9 October 2003.

*Attorney General Roy Cooper, by Assistant Attorney General Steven F. Bryant, for the State.*

*Reita P. Pendry for defendant.*

McGEE, Judge.

Antione Denard Allen (defendant) appeals from a judgment sentencing him to life imprisonment without parole, entered after a jury found him guilty of the first degree murder of Feliciano Noyola.[1]

The State's evidence tended to show that during the afternoon of 27 January 1998, Marshall Gillespie (Gillespie) visited Stephen Hairston (Hairston) at Hairston's home. Gillespie asked Hairston to help him rob "some Mexicans" living at 1231-B Gholson Street, Winston-Salem, North Carolina. Hairston agreed, retrieved his gun, and got into a car with Gillespie. Steven Gaines (Gaines) and defendant were already seated in the car. Defendant was armed with an assault rifle. While the four men rode in the car to the home of defendant's aunt, they planned the robbery.

At the home of defendant's aunt, they switched cars, getting into defendant's aunt's car and driving to Old North Village to pick up Kenyon Grooms (Grooms). Grooms got into the driver's seat of the car and defendant directed him to the apartment complex on Gholson Street.

When the five men reached the apartment complex on Gholson Street, Hairston, Gaines and defendant got out of the car. Gaines went to the rear of the apartment at 1231-B. Hairston and defendant, who was carrying an assault rifle, walked toward the apartment. Gillespie also exited the car and approached the apartment. Hairston then walked away from the apartment complex, abandoning the robbery. Gillespie and defendant entered the apartment. Defendant shot Feliciano Noyola (Feliciano) and Gillespie shot Esmeralda Noyola (Esmeralda), a six-year-old child. Gaines also entered the apartment. Grooms drove away from the scene.

Officer T.G. Brown (Officer Brown) of the Winston-Salem Police Department responded to a call reporting gunfire. Officer Brown found two Hispanic women, Maria Santos (Santos) and Justina Dominguez (Dominguez), in the apartment. The two women were crying and were unable to speak English. Officer Brown found Feliciano still breathing, on the floor in the kitchen in a pool of blood. He found Esmeralda's body on the floor near the entrance to a bedroom. Officer Brown requested backup officers and emer-

---

1. In *State v. Allen*, 353 N.C. 504, 546 S.E.2d 372 (2001), our Supreme Court reversed defendant's convictions on two counts of first degree murder. Defendant was awarded a new trial. The subsequent trial is the subject of this appeal.

gency medical services (EMS). Before the EMS arrived, Feliciano stopped breathing.

Officer Rafael Barros (Officer Barros) of the Winston-Salem Police Department arrived approximately ten minutes after Officer Brown. Officer Barros spoke fluent Spanish. He found Santos and Dominguez in one of the bedrooms. Santos, who was the mother of Esmeralda, reported that three black men had entered the apartment through the front door and demanded money. Dominguez, who was Feliciano's wife, said that she had been in a bedroom with her baby when one of the intruders kicked the door open and ripped a gold chain from her neck. She heard gunshots but she never left the bedroom.

Officer Barros showed a photographic lineup to Santos and Dominguez on 28 January 1998. Officer Barros testified that Santos identified Gillespie as the man who shot Esmeralda, but admitted that Santos was not positive in her selection. Dominguez did not identify Gillespie, and neither woman identified defendant.

At trial, Hairston and Grooms testified as witnesses for the State. Both men admitted their participation in the robbery. They testified that defendant, armed with an assault rifle, had entered the apartment at 1231-B Gholson Street, along with Gillespie.

Defendant testified at trial that he had gone with the others to the apartment at 1231-B Gholson Street with the intent to sell Feliciano guns as payment for drugs. When defendant entered the apartment, Feliciano pulled a gun. Feliciano fired a shot toward defendant's head and defendant accidently pulled the trigger on the gun he was holding. Shots were fired and defendant and Gillespie fled the apartment. Defendant testified that when he heard the following day that a child had been killed in the apartment, he went to Kernersville. He remained in Kernersville with friends for two days.

I.

[1] Defendant first argues that the evidence at trial was insufficient to prove the elements of premeditation and deliberation for first degree murder. The trial court denied defendant's motions to dismiss at the close of the State's evidence and again at the close of all the evidence. In order to submit the charge of first degree murder to the jury, the State must have presented substantial evidence from which the jury could conclude that defendant shot and killed Feliciano with malice, premeditation, and deliberation.

**STATE v. ALLEN**

[162 N.C. App. 587 (2004)]

When a trial court considers a motion to dismiss on the ground of insufficiency of the evidence, the trial court must determine "whether there is substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the offense." *State v. Crawford*, 344 N.C. 65, 73, 472 S.E.2d 920, 925 (1996). "The existence of substantial evidence is a question of law for the trial court, which must determine whether there is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *State v. Barden*, 356 N.C. 316, 351, 572 S.E.2d 108, 131 (2002), *cert. denied*, —— U.S. ——, 155 L. Ed. 2d 1074 (2003). The trial court may consider evidence that is direct, circumstantial, or both. *Id.* Furthermore, the trial court must consider the evidence in the light most favorable to the State and the State is given the benefit of all reasonable inferences therefrom. *State v. Lucas*, 353 N.C. 568, 581, 548 S.E.2d 712, 721 (2001). In reviewing a motion to dismiss, "[t]he defendant's evidence is not considered unless favorable to the State." *Id.*

"First degree murder is the unlawful killing of a human being with malice, premeditation, and deliberation." *State v. Vause*, 328 N.C. 231, 238, 400 S.E.2d 57, 62 (1991) (citations omitted); N.C. Gen. Stat. § 14-17 (2003). The intentional use of a deadly weapon which proximately causes death raises the presumption that the killing was unlawful and performed with malice. *State v. Myers*, 299 N.C. 671, 677, 263 S.E.2d 768, 772 (1980). Premeditation and deliberation are generally established by circumstantial evidence, "because they ordinarily are not susceptible to proof by direct evidence." *State v. Bonney*, 329 N.C. 61, 77, 405 S.E.2d 145, 154 (1991). Premeditation means a defendant formed the specific intent to kill the victim some time beforehand, however brief the period of time may have been before the killing. *Id.* "Deliberation does not require brooding or reflection for any appreciable length of time, but imports the execution of an intent to kill in a cool state of blood without legal provocation, and in furtherance of a fixed design." *Myers*, 299 N.C. at 677, 263 S.E.2d at 772.

Circumstances from which premeditation and deliberation can be implied include:

(1) absence of provocation on the part of the deceased, (2) the statements and conduct of the defendant before and after the killing, (3) threats and declarations of the defendant before and during the occurrence giving rise to the death of the deceased, (4) ill will or previous difficulties between the parties, (5) the dealing

of lethal blows after the deceased has been felled and rendered helpless, (6) evidence that the killing was done in a brutal manner, and (7) the nature and number of the victim's wounds.

*State v. Olson*, 330 N.C. 557, 565, 411 S.E.2d 592, 596 (1992).

Considering the evidence in the light most favorable to the State, the evidence tended to show that on 27 January 1998, defendant armed himself with a loaded assault rifle as part of a plan to rob Feliciano. Defendant played a critical role in developing that plan. Defendant provided transportation and directions to the apartment at 1231-B Gholson Street. Once in the apartment parking lot, defendant approached and entered the apartment without any attempt to conceal his weapon. Only a very brief time passed between the time defendant entered the apartment and the time Feliciano was shot. This was substantial evidence which a jury could accept as adequate to conclude that defendant intentionally killed Feliciano with premeditation and deliberation. *See State v. Welch*, 316 N.C. 578, 342 S.E.2d 789 (1986) (the defendant was found guilty of murder in the first degree based on premeditation and deliberation where the defendant planned to rob a store and shot the cashier with a gun he had been told was inoperable). Defendant's assignments of error two, three, and four are without merit.

## II.

**[2]** Defendant next argues that the trial court erred in admitting hearsay statements made by Dominguez and Santos conveyed through the testimony of Officer Barros. Defendant contends that the statements of Santos and Dominguez do not meet any exception to the hearsay rule. At issue are the statements of Santos and Dominguez on the evening of the shootings and Santos' identification of Gillespie as Esmeralda's killer.

"Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C. Gen. Stat. § 8C-1, Rule 801(c) (2003). Hearsay is only admissible as provided by statute or under the Rules of Evidence. N.C.G.S. § 8C-1, Rule 802. "[E]ven if an out-of-court statement falls within an exception to the hearsay rule, it nonetheless must be excluded at a criminal trial if it infringes upon the defendant's constitutional right to confrontation." *State v. Rogers*, 109 N.C. App. 491, 499, 428 S.E.2d 220, 224-25, *cert. denied*, 334 N.C. 625, 435 S.E.2d 348 (1993), *cert. denied*, 511 U.S. 1008, 128 L. Ed. 2d 54 (1994). However, "Rule 803 provides that certain statements are

not excluded as hearsay regardless of the availability of the declarant for purposes of testifying." *State v. Pickens*, 346 N.C. 628, 644, 488 S.E.2d 162, 171 (1997). One such exception is an excited utterance. *Id.*; *see* N.C. Gen. Stat. § 8C-1, Rule 803(2) (2003).

Defendant objected to the admission of the statements of Santos and Dominguez on the evening of the shootings as excited utterances, pursuant to N.C. Gen. Stat. § 8C-1, Rule 803(2). The trial court, in an extensive written ruling, detailed its decision to admit the statements. An excited utterance is a "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." N.C. Gen. Stat. § 8C-1, Rule 803(2). For a statement to properly fall within this exception, there must be " '(1) a sufficiently startling experience suspending reflective thought and (2) a spontaneous reaction, not one resulting from reflection or fabrication.' " *Pickens*, 346 N.C. at 644, 488 S.E.2d at 171 (quoting *State v. Smith*, 315 N.C. 76, 86, 337 S.E.2d 833, 841 (1985)). The trial court noted that both witnesses were under extreme stress when they spoke with Officer Barros approximately twenty minutes after the shooting. Because Officer Barros spoke Spanish, his arrival at the scene offered the women their first opportunity to convey the events of the shootings. Officer Barros testified that it appeared that Santos had been crying and that Dominguez stopped crying when speaking with Officer Barros. We conclude that because Santos' and Dominguez's statements were made only twenty minutes after the shootings and the statements related to the startling events at issue, the testimony was properly admitted pursuant to N.C.G.S. § 8C-1, Rule 803(2).

**[3]** Defendant further argues the trial court erred in admitting Santos' identification of Gillespie in a photographic line-up on 28 January 1998. The trial court concluded that no specific hearsay exception applied under either N.C. Gen. Stat. § 8C-1, Rule 803(1) or Rule 804(b)(1)-(4). After finding Santos to be unavailable and then methodically utilizing a six-part inquiry, the trial court made findings of fact and conclusions of law that Santos' statement was relevant and admissible under N.C. Gen. Stat. § 8C-1, Rule 804(b)(5).

In order to admit hearsay testimony under Rule 804(b)(5), the trial court must first find the declarant to be unavailable. After reviewing the State's evidence detailing its repeated attempts to obtain the attendance of Santos and Dominguez for defendant's first trial in July 1999 and his retrial in 2002, the trial court found the witnesses to be unavailable for purposes of testifying. Officer Barros,

then working for the U.S. Department of Treasury, contacted Santos and Dominguez by telephone on numerous occasions in a remote location in Mexico, promising to pay all expenses and to arrange for transportation for the women to return to testify. Both women refused to return to Forsyth County for the first trial. As to the second trial, Officer Barros was unable to locate Santos and Dominguez was uncooperative.

Rule 804(a)(5) provides that unavailability as a witness includes a situation where the declarant "[i]s absent from the hearing and the proponent of his statement has been unable to procure his attendance . . . by process or other reasonable means." N.C. Gen. Stat. § 8C-1, Rule 804(a)(5) (2003). After a thorough review of the record, we find no error in the trial court's conclusion that Santos and Dominguez were unavailable to testify.

The second step in assessing the admissibility of hearsay statements under Rule 804(b)(5) is to conduct a six-prong inquiry. The trial court is to consider:

(1) Whether the proponent of the hearsay provided proper notice to the adverse party of his intent to offer it and of its particulars;

(2) That the statement is not covered by any of the exceptions listed in Rule 804(b)(1)-(4);

(3) That the statement possesses "equivalent circumstantial guarantees of trustworthiness";

(4) That the proffered statement is offered as evidence of a material fact;

(5) Whether the hearsay is "more probative on the point for which it is offered than any other evidence which the proponent can produce through reasonable means"; and

(6) Whether "the general purposes of [the] rules [of evidence] and the interests of justice will best be served by admission of the statement into evidence."

*State v. Fowler*, 353 N.C. 599, 609, 548 S.E.2d 684, 693 (2001) (citations omitted), *cert. denied*, 535 U.S. 939, 152 L. Ed. 2d 230 (2002); *see* N.C.G.S. § 8C-1, Rule 804(b)(5).

The trial court must first determine whether the State, as proponent of the hearsay testimony, provided adequate written notice to

defendant, the adverse party, regarding its intent to offer the hearsay testimony and the particulars of the testimony. N.C.G.S. § 8C-1, Rule 804(b)(5). The purpose of such notice is to provide the adverse party with a fair opportunity to prepare to address the evidence. N.C.G.S. § 8C-1, Rule 804 (b)(5). Defendant does not contend notice was inadequate; therefore, we proceed with our review of the necessary inquiry.

The trial court next considered whether Santos' identification of Gillespie fell within any other hearsay exception listed in Rule 804(b)(1)-(4). *See Fowler*, 353 N.C. at 609, 548 S.E.2d at 693. The trial court concluded the identification was not covered by any other hearsay exception. Defendant does not challenge the trial court's conclusion.

Under the third prong, the trial court considered whether the statement at issue possessed "guarantees of trustworthiness" that are equivalent to other exceptions contained in Rule 804(b). *Id.* Factors to be considered in assessing whether the hearsay statements possess sufficient indicia of trustworthiness are:

> (1) assurance of personal knowledge of the declarant of the underlying event; (2) the declarant's motivation to speak the truth or otherwise; (3) whether the declarant ever recanted the testimony; and (4) the practical availability of the declarant at trial for meaningful cross-examination.

*State v. Castor*, 150 N.C. App. 17, 26, 562 S.E.2d 574, 580 (2002) (citations omitted), *cert. denied*, 357 N.C. 508, 587 S.E.2d 885 (2003).

In the case before us, the trial court found that Santos' identification possessed sufficient guarantees of trustworthiness. The trial court based its conclusion on the following findings of fact: (1) Santos was an eyewitness to the shooting and thus had personal knowledge of the event; (2) Santos was motivated to speak the truth to Officer Barros in order to aid in the apprehension of her daughter's killer; (3) Santos never recanted her identification of Gillespie as the individual who shot her daughter; and (4) Santos was extremely difficult to contact in Mexico and her address was unknown at the time of the second trial. She was resolute in her resistance to return to the United States for defendant's trial despite the State's offer to provide for her expenses and to make all necessary arrangements. Accordingly, these findings support the trial court's conclusion that the identification was trustworthy.

Under the inquiry's fourth prong, the trial court found that the identification by Santos was relevant. The evidence pertained to the material facts at issue. Santos' statement identified one of the killers and provided details of the crime, satisfying the fourth requirement.

The fifth prong mandates that the trial court consider whether Santos' statement was more probative on the point for which it was offered than any other evidence the proponent could produce through reasonable means. *Fowler*, 353 N.C. at 613, 548 S.E.2d at 695. "Th[is] requirement imposes the obligation of a dual inquiry: were the proponent's efforts to procure more probative evidence diligent, and [was] the statement more probative on the point than other evidence that the proponent could reasonably procure?" *Smith*, 315 N.C. at 95, 337 S.E.2d at 846. At the outset, the trial court found that Santos was the only person in the apartment capable of identifying any of the intruders who possessed guns. She alone was able to identify Gillespie as the individual who shot Esmeralda. The trial court also concluded that the State had been diligent in its attempt to obtain Santos' presence for trial, but Santos refused to return for the trial and later her precise whereabouts in Mexico were unknown. Santos' identification is as probative on the issue of the identification of Esmeralda's shooter as any other evidence the State could procure through reasonable efforts. Based on these conclusions, the two-part inquiry outlined in *Smith* was met by the State.

The trial court finally considered whether, under the sixth prong, the admission of the hearsay statements of Santos served the interest of justice and the general purpose of the rules of evidence. *Fowler*, 353 N.C. at 614, 548 S.E.2d at 696. The trial court determined that the admission of Santos' identification would serve the interest of justice. The trial court noted that defendant was free to raise inconsistencies in Santos' statements during cross-examination of Officer Barros. Defendant has failed to show any error in the trial court's analysis.

The trial court correctly deemed Santos to be unavailable and satisfied all six prongs of the necessary inquiry. We find no error in the admission of Santos' identification of Gillespie.

[4] Defendant lastly argues that this Court, in analyzing "whether the admission of the declarant's out-of-court statements violate the Confrontation Clause, . . . should independently review whether the government's proffered guarantees of trustworthiness satisfy the

demands of the Clause." *Lilly v. Virginia*, 527 U.S. 116, 137, 144 L. Ed. 2d 117, 134 (1999). We have therefore conducted an independent assessment to determine whether Santos' statement possesses sufficient "particularized guarantees of trustworthiness" in compliance with the mandate of the Confrontation Clause. *Id.* at 125, 144 L. Ed. 2d at 127; *see also, Fowler*, 353 N.C. at 616, 548 S.E.2d at 697. After a careful review, we conclude that the admission of Santos' statement is consistent with the Confrontation Clause. Santos received no benefit in exchange for her statement, nor was it made in order to avoid prosecution. She was the sole eyewitness to the murder of her daughter by Gillespie and never recanted her statement. There is no evidence she bore any ill will towards Gillespie. Finally, defendant was free to discredit Santos' identification based on any inconsistencies in her statement. Therefore, we reject defendant's contention that the admission of Santos' identification of Gillespie in the photographic line-up violated the Confrontation Clause. Accordingly, defendant's assignments of error five and seven are overruled.

III.

[5] By defendant's assignments of error six and nine, defendant argues that the trial court erred in admitting certain testimony that depicted the character of decedents, Feliciano and Esmeralda. Defendant asserts that the character evidence was admitted even though defendant had not placed the character of either victim at issue.

At trial, Susan Moretz (Moretz), Esmeralda's English As A Second Language (ESL) teacher, described Esmeralda as having overcome an initial language barrier. According to Moretz, Esmeralda enjoyed school and sharing with her fellow students. Moretz testified that she saw Esmeralda in the school cafeteria on 27 January 1998 washing tables. Esmeralda smiled and greeted Moretz and appeared to be in good health.

James Lambert (Lambert), Feliciano's supervisor at the K-Mart Distribution Center, testified at trial about Feliciano's language difficulties and his ability to get along well with his co-workers. Lambert remarked that Feliciano was a good worker and that he appeared happy in a photograph introduced for identification purposes.

The admissibility of evidence concerning a victim's character is set forth in N.C. Gen. Stat. § 8C-1, Rule 404(a)(2) (2003):

Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:

. . . .

(2) *Character of victim.*—Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor[.]

The rule thus permits the State to introduce evidence of a victim's character solely "to rebut defendant's evidence calling it into question." *State v. Quick,* 329 N.C. 1, 26, 405 S.E.2d 179, 194 (1991). In the case before us, at the time of the testimony of Moretz and Lambert, defendant had not challenged the character of Esmeralda or Feliciano, nor had he presented evidence that either was the aggressor. Therefore, the admission of testimony as to character was in error.

However, "the admission of evidence which is technically inadmissible will be treated as harmless unless prejudice is shown such that a different result likely would have ensued had the evidence been excluded." *State v. Gappins,* 320 N.C. 64, 68, 357 S.E.2d 654, 657 (1987). The State presented overwhelming evidence of defendant's guilt and defendant has failed to show that the exclusion of the character testimony would have impacted the jury's verdict.

## IV.

[6] Defendant further contends that the trial court's decision to limit defendant's cross-examination of Moretz and Lambert was in error. Defendant wanted to ask Moretz whether she was aware of any illegal drug activity at 1231-B Gholson Street and to ask Lambert whether he was aware of Feliciano's conviction for possession of marijuana. Defendant argued at trial that these questions were relevant to Santos' fear of returning to testify and were relevant to address the extent of Lambert's knowledge of Feliciano's character. The trial court sustained the State's objection to this line of cross-examination.

First we note that our Supreme Court has clearly announced that constitutional issues not raised and passed upon at trial will not be considered for the first time on appeal. *State v. Benson,* 323 N.C. 318,

322, 372 S.E.2d 517, 519 (1988); N.C.R. App. P. 10(b)(1). Therefore, we will not address defendant's assertion upon appeal that the trial court violated his right to cross-examine witnesses as guaranteed by the Sixth Amendment to the United States Constitution and Article I, Section 23 of the North Carolina Constitution.

Furthermore, "[i]t is well established that an exception to the exclusion of evidence cannot be sustained where the record fails to show what the witness' testimony would have been had he been permitted to testify." *State v. Simpson*, 314 N.C. 359, 370, 334 S.E.2d 53, 60 (1985). In order to preserve for appellate review the exclusion of evidence, the "significance of the excluded evidence must be made to appear in the record and a specific offer of proof is required unless the significance of the evidence is obvious from the record." *Id*. Our Supreme Court has held that in order to conclude that prejudicial error has occurred, the essential content or substance of the witness's testimony must be shown. *Id*.

In this case, the trial court expressly asked defendant whether he wished to make an offer of proof or reserve the right to make an offer of proof regarding the excluded line of questioning. Defendant made no such offer of proof, and thus defendant has waived this argument on appeal. Defendant's assignments of error eight and ten are overruled.

V.

[7] By his assignment of error eleven, defendant argues that the trial court erred in instructing the jury on defendant's flight. Defendant argues the instruction was inappropriate in the absence of evidence supporting the instruction.

The trial court gave the State's requested instruction on flight:

The State in this case contends and the defendant . . . denies that the defendant . . . fled. Evidence of flight may be considered by you together with all other facts and circumstances in these cases in determining whether the combined circumstances amount to an admission or show a consciousness of guilt. However, proof of this circumstance is not sufficient in itself to establish . . . guilt.

Further, this circumstance has no bearing on the question of whether defendant . . . acted with premeditation and deliberation. Therefore, it must not be considered by you as evidence of premeditation and deliberation.

An instruction on flight is appropriate where " 'there is some evidence in the record reasonably supporting the theory that defendant fled after commission of the crime[.]' " *State v. Kornegay*, 149 N.C. App. 390, 397, 562 S.E.2d 541, 546 (quoting *State v. Irick*, 291 N.C. 480, 494, 231 S.E.2d 833, 842 (1977)), *disc. review denied*, 355 N.C. 497, 564 S.E.2d 51 (2002). " '[M]ere evidence that defendant left the scene of the crime is not enough to support an instruction on flight. There must also be some evidence that defendant took steps to avoid apprehension.' " *State v. Lloyd*, 354 N.C. 76, 119, 552 S.E.2d 596, 625-26 (2001) (quoting *State v. Thompson*, 328 N.C. 477, 490, 402 S.E.2d 386, 392 (1991)).

The evidence is undisputed that defendant fled the scene of the crime following the shooting and ran to the apartment of an acquaintance, where defendant called a cab to take him to his cousin's house. Defendant later returned home where he remained overnight. Defendant heard the following morning that a child had been killed during the robbery and he then left Winston-Salem for a friend's home in Kernersville. He remained there for two days before returning to Winston-Salem to speak with the police about the events of 27 January 1998.

Under these facts, we conclude the trial court did not err in its instruction to the jury. *See State v. Eubanks*, 151 N.C. App. 499, 565 S.E.2d 738 (2002) (flight instruction was appropriate where the defendant left the scene of the crime without providing assistance to the victim, disposed of the gun, and did not turn himself into police). There is sufficient evidence to support an inference that defendant sought to escape apprehension. Defendant's assignment of error eleven is without merit.

VI.

[8] In defendant's assignment of error fifteen, he contends that the State improperly commented on defendant's invocation of his right to silence during closing arguments. The State, on four occasions during its closing argument, referred to defendant as waiting four years to tell his account of the events on the night of 27 January 1998. Defendant asserts that the State's comments can only be construed to refer to defendant's failure to testify at his first trial in June 1999.

Defendant objected only once to such remarks by the State during closing argument and the objection was overruled. Defendant

fails to argue plain error upon appeal as to those instances where defendant raised no objection at trial. The Rules of Appellate Procedure provide that in a criminal case, a defendant may raise a question, not properly preserved by rule or law for appellate review, by specifically and distinctly arguing plain error. N.C.R. App. P. 10(c)(4). Because defendant has failed to argue plain error, this Court will not review the merits of his argument as to the remarks made by the State without objection by defendant.

In the instance of defendant's sole objection to the State's comment, defendant did not state the specific grounds for the requested ruling. Upon appeal, defendant asserts the State violated his right to silence as guaranteed by the Fifth Amendment to the United States Constitution.

Defendant failed to raise his constitutional concerns before the trial court. As we noted previously, because defendant did not raise the constitutional issue before the trial court, defendant is barred from presenting the issue on appeal. N.C.R. App. P. 10(b)(1); *State v. Wiley*, 355 N.C. 592, 624, 565 S.E.2d 22, 44 (2002), *cert. denied*, 537 U.S. 1117, 154 L. Ed. 2d 795 (2003). Thus, although troubled by the State's remarks, we conclude that defendant has waived the issue upon appeal. Defendant's assignment of error is dismissed.

VII.

[9] In defendant's assignment of error sixteen, he contends that the trial court erred in failing to intervene *ex mero motu* during the State's closing argument regarding the testimony of the State's two immunized witnesses, Hairston and Grooms. Defendant failed to object at trial to any of the remarks he now claims are improper. Upon appeal, he contends that the State's argument was outside the record in violation of N.C. Gen. Stat. § 15A-1230. "Where a defendant fails to object to the closing arguments at trial, defendant must establish that the remarks were so grossly improper that the trial court abused its discretion by failing to intervene *ex mero motu*." *State v. Mitchell*, 353 N.C. 309, 324, 543 S.E.2d 830, 839, *cert. denied*, 534 U.S. 1000, 151 L. Ed. 2d 389 (2001). "To establish such an abuse, defendant must show that the prosecutor's comments so infected the trial with unfairness that they rendered the conviction fundamentally unfair." *State v. Davis*, 349 N.C. 1, 23, 506 S.E.2d 455, 467 (1998), *cert. denied*, 526 U.S. 1161, 144 L. Ed. 2d 219 (1999). "[T]he appellate courts ordinarily will not review the exercise of the trial judge's discretion in this regard unless the impropriety of counsel's remarks is extreme and is

clearly calculated to prejudice the jury in its deliberations." *State v. Johnson*, 298 N.C. 355, 369, 259 S.E.2d 752, 761 (1979).

In this case, the State explained to the jury that the State had entered into a plea agreement with Hairston and Grooms in order to obtain their testimony at defendant's trial. The State explicitly referred to Hairston and Grooms as "thugs." Citing our Supreme Court's holding in *State v. Woodson*, 287 N.C. 578, 215 S.E.2d 607 (1975), the State explained that based on public policy, it is the common and accepted practice that a State may contract with a criminal for his exemption from prosecution if by so bargaining, the State obtains the honest and fair testimony as to the crime in the case. Defendant contends that the State's tactic serves to inform the jury that the trial court has already made a positive determination as to the credibility of the two witnesses.

Trial counsel is provided wide latitude in presenting jury arguments and thus counsel is "entitled to argue the law, the facts, and all reasonable inferences therefrom." *State v. Rose*, 339 N.C. 172, 203, 451 S.E.2d 211, 229 (1994), *cert. denied*, 515 U.S. 1135, 132 L. Ed. 2d 818 (1995). Contrary to defendant's argument, this Court does not interpret the State's remarks at issue to present an intimation as to the trial court's opinion or our Supreme Court's opinion as to the credibility of either witness. Accordingly, we conclude that defendant has failed to show error or an abuse of discretion by the trial court. Defendant's assignment of error sixteen is overruled.

VIII.

[10] In defendant's final assignment of error, he argues that the trial court lacked jurisdiction to try defendant on the indictment for first degree murder because the indictment failed to allege all the elements of the offense. He maintains the trial court violated his federal and State constitutional rights.

As defendant acknowledges, this issue has been decided by our Supreme Court which has consistently held that the "short-form indictment is sufficient to charge a defendant with first-degree murder." *Barden*, 356 N.C. at 384, 572 S.E.2d at 150. "The short-form murder indictment authorized by N.C. Gen. Stat. § 15-144 (2001) gives a defendant notice that he is charged with first-degree murder and that the maximum penalty to which he could be subject is death." *State v. Smith*, 152 N.C. App. 29, 34, 566 S.E.2d 793, 797, *cert. denied*, 356 N.C. 311, 571 S.E.2d 208 (2002). This Court is bound by the decisions of our Supreme Court; therefore, this assignment of error is overruled.

After a careful review of defendant's remaining assignments of error, we find each to be without merit. As for those assignments of error for which defendant failed to present any supporting argument, they are deemed abandoned. N.C.R. App. P. 28(b)(6).

No prejudicial error.

Judges HUNTER and CALABRIA concur.