STATE OF NORTH CAROLINA v. ANTIONE DENARD ALLEN

No. COA02-1624-2

(Filed 21 June 2005)

**Constitutional Law; Evidence— right of confrontation— hearsay—unavailable witness—testimonial statements— photographic lineup identification—harmless error**

A review of defendant's case in light of *Crawford v. Washington*, 541 U.S. 36 (2004), revealed that although defendant's right to confrontation was violated in a first-degree murder case by the admission of evidence through an officer's testimony of statements made by two unavailable witnesses to the officer in the victim's apartment and during one witness's photographic lineup identification of a coparticipant on 28 January 1998 since the statements were testimonial, the error was harmless beyond a reasonable doubt because: (1) the evidence of defendant's guilt even without considering the statements made by the two unavailable witnesses is overwhelming; (2) two of the State's witnesses testified that they, along with defendant and two others, were involved in a plan to rob the victim; (2) the doctor who performed the autopsy testified that the older victim's wounds were consistent with a high-velocity bullet from a rifle and that the cause of death was a gunshot wound to the abdomen, and defendant admitted that he was carrying an assault rifle into the apartment and that the victim fell after defendant pulled the rifle's trigger; and (3) even though the officer testified that one of the witnesses identified a photo of a coparticipant as being the person who shot her daughter, this evidence did not directly implicate defendant for the murder of the other victim, defendant himself testified that the coparticipant was present with him and that shots were fired in the apartment, neither witness identified defendant, and defendant was not convicted for the murder of the six-year-old girl.

Appeal by defendant from judgment dated 1 March 2002 by Judge Melzer A. Morgan, Jr. in Superior Court, Forsyth County. Heard by this Court on 9 October 2003 and opinion filed finding no prejudicial error on 17 February 2004. Remanded to this Court by order of the North Carolina Supreme Court for reconsideration in light of *Crawford v. Washington*, 541 U.S. 36, 158 L. Ed. 2d 177 (2004).

**STATE v. ALLEN**

[171 N.C. App. 71 (2005)]

*Attorney General Roy Cooper, by Assistant Attorney General Robert C. Montgomery, for the State.*

*Reita P. Pendry for defendant-appellant.*

McGEE, Judge.

Antione Denard Allen (defendant) was convicted of first-degree murder of Feliciano Noyola (Noyola).[1] At trial, the State's evidence tended to show that on 27 January 1998, Marshall Gillespie (Gillespie) visited Stephon Hairston (Hairston) at Hairston's home. Gillespie asked Hairston to help him rob "some Mexicans" living at 1231-B Gholson Street, Winston-Salem, North Carolina. Hairston agreed, retrieved his gun, and got into a vehicle with Gillespie. Steven Gaines (Gaines) and defendant were already in the vehicle. Defendant was armed with an assault rifle. The four men planned the robbery as they drove to the home of defendant's aunt, where they switched vehicles, getting into defendant's aunt's vehicle to drive to pick up Kenyon Grooms (Grooms).

Grooms got into the driver's seat, and defendant directed him to an apartment complex on Gholson Street. At the apartment complex, Hairston, Gaines, Gillespie and defendant got out of the vehicle and approached apartment 1231-B (the apartment). Gaines went toward the rear of the apartment. Hairston walked away, abandoning the robbery. Grooms stayed in the car. Defendant, carrying the assault rifle, and Gillespie, armed with a nine millimeter gun, entered the apartment. Defendant shot Noyola and Gillespie shot a six-year-old girl. Hearing gunshots, Grooms started the car and drove away.

Officer T.G. Brown (Officer Brown) of the Winston-Salem Police Department responded to a telephone call reporting gunfire. Officer Brown found two Hispanic women, Maria Santos (Santos) and Justina Dominguez (Dominguez), in the apartment. The two women were crying and were unable to speak English. Officer Brown found Noyola still breathing, but Noyola died before emergency medical personnel arrived. Officer Brown found the body of the six-year-old girl on the floor near the entrance to a bedroom.

Officer Rafael Barros (Officer Barros) of the Winston-Salem Police Department arrived approximately ten minutes after Officer

---

1. Defendant was originally convicted of two counts of first-degree murder, but on appeal, our Supreme Court granted him a new trial. *State v. Allen,* 353 N.C. 504, 546 S.E.2d 372 (2001). The subsequent trial is the subject of this appeal.

Brown. Officer Barros spoke fluent Spanish. He found Santos and Dominguez in one of the bedrooms. Santos, who was the mother of the six-year old girl, reported that three black men had entered the apartment through the front door, demanded money, shot Noyola, shot the six-year old girl, and left the scene. Dominguez, who was Noyola's wife, said that she had been in a bedroom with her baby when one of the intruders kicked the door open and ripped a gold chain from her neck. She heard gunshots but she never left the bedroom.

Officer Barros showed a photographic lineup to Santos and Dominguez on 28 January 1998. Officer Barros testified that Santos identified Gillespie as the man who shot Santos's daughter; but Officer Barros admitted that Santos was not positive in her identification. Dominguez did not identify Gillespie, and neither woman identified defendant. Santos and Dominguez later returned to Mexico and refused to return for defendant's trial.

Prior to trial, the trial court ruled that the statements made by Santos and Dominguez at the scene and during the photographic lineup would be admissible under the excited utterance exception and the residual exception to the hearsay rule respectively.

At trial, in addition to Officer Barros testifying as to the statements made by Santos and Domiguez, Hairston and Grooms testified as witnesses for the State. Both men admitted their participation in the robbery. Each testified that defendant, armed with an assault rifle, entered the apartment with Gillespie.

Dr. Patrick Lantz (Dr. Lantz) also testified for the State. Dr. Lantz conducted autopsies on both Noyola and the six-year-old girl. He testified that the entrance and exit wounds, and the multiple fragments found in Noyola's abdomen were characteristic of being from a high-powered rifle. The six-year-old girl's wounds were consistent with a bullet from a nine millimeter gun or other medium caliber gun, not an assault rifle.

Defendant testified that he had gone with the others to the apartment to sell an assault rifle to Noyola as payment for drugs. Defendant further testified that when he entered the apartment, Noyola pulled out a gun, and fired a shot toward defendant's head. Defendant "tensed up" and accidentally pulled the trigger of the rifle. Noyola dropped his gun and fell. Defendant testified that shots were fired in the apartment and that he and Gillespie fled.

The jury found defendant guilty of first-degree murder, and defendant was sentenced to life in prison without parole. Defendant appealed to this Court and argued in part that the trial court erred in admitting hearsay statements made by Dominguez and Santos as conveyed through the testimony of Officer Barros. Our Court concluded that because the statements by Santos and Dominguez "were made only twenty minutes after the shootings and the statements related to the startling events at issue, the testimony was properly admitted pursuant to N.C.G.S. § 8C-1, Rule 803(2)" as an excited utterance. *State v. Allen,* 162 N.C. App. 587, 593, 592 S.E.2d 31, 37 (2004). We further concluded that the trial court had properly "determined that the admission of Santos'[s] identification would serve the interest of justice" and that the trial court had properly admitted the photographic identification under N.C. Gen. Stat. § 8C-1, Rule 804(b)(5). *Id.* at 593-96, 592 S.E.2d at 37-39.

The United States Supreme Court subsequently filed its decision in *Crawford v. Washington,* 541 U.S. 36, 158 L. Ed. 2d 177 (2004). Defendant filed notice of appeal and a petition for discretionary review in our Supreme Court on 23 March 2004. The Supreme Court dismissed defendant's notice of appeal and allowed his petition for discretionary review for the limited purpose of remanding the matter to this Court for reconsideration in light of *Crawford. State v. Allen,* 358 N.C. 546, 599 S.E.2d 557 (2004).

The United States Supreme Court in *Crawford* revised its previous standard for admissibility of hearsay evidence under the Confrontation Clause of the Sixth Amendment of the United States Constitution. *Crawford,* 541 U.S. at 60-69, 158 L. Ed. 2d at 198-203. "Where testimonial evidence is at issue, . . . the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *Id.* at 68, 158 L. Ed. 2d at 203. In the present case, defendant argues that, in light of *Crawford,* his Sixth Amendment right of confrontation was violated. He argues that his right of confrontation was violated by admitting into evidence through Officer Barros's testimony: (1) the statements made by Santos and Dominguez to Officer Barros in the apartment, and (2) Santos's identification of Gillespie on 28 January 1998.

Our Court has held that evaluating whether a defendant's right to confrontation has been violated is a three-step process. *State v. Clark,* 165 N.C. App. 279, 283, 598 S.E.2d 213, 217, *disc. review denied,* 358 N.C. 734, 601 S.E.2d 866 (2004). We must determine: "(1) whether the evidence admitted was testimonial in nature; (2) whether

the trial court properly ruled the declarant was unavailable; and (3) whether defendant had an opportunity to cross-examine the declarant." *Clark*, 165 N.C. App. at 283, 598 S.E.2d at 217. It is undisputed, however, that both Santos and Dominguez were unavailable and that defendant did not have an opportunity to cross-examine either declarant. Therefore, the issue before us is whether the statements made by Santos and Dominguez, as conveyed through Officer Barros, were testimonial.

Although the United States Supreme Court chose to "leave for another day any effort to spell out a comprehensive definition of 'testimonial[,]' " it provided examples of statements that would be testimonial. *Crawford*, 541 U.S. at 68, 158 L. Ed. 2d at 203. Testimonial statements referred to included *ex parte* statements made in court, affidavits, depositions, confessions, and "pretrial statements that declarants would reasonably expect to be used prosecutorially." The Court specifically identified "[s]tatements taken by police officers in the course of interrogations" as being testimonial. *Id.* at 52, 158 L. Ed. 2d at 193. While the Supreme Court held that a tape-recorded statement made to police by Crawford's wife, "knowingly given in response to structured police questioning, [qualified] under any conceivable definition [of interrogation,]" the Court refrained from defining "interrogation" with any greater particularity. *Id.* at 53 n.4, 158 L. Ed. 2d at 194 n.4. The Court did specify, however, that it was using "interrogation" in its colloquial, not its technical legal sense. *Id.*

In the case before us, the State argues that " 'interrogation' does not encompass preliminary investigatory questions asked by the police at the scene of the crime shortly after its occurrence." Indeed, the Supreme Court narrowed the application of *Crawford* by using the word "interrogation" rather than "questioning," suggesting that police questioning is not the same as police interrogation. *See Hammon v. State*, 809 N.E.2d 945, 952 (Ind. Ct. App. 2004) (concluding that the Supreme Court's "choice of words clearly indicates that police 'interrogation' is not the same as, and is much narrower than, police 'questioning' "). However, our Courts have previously determined that a witness's statements to a police officer "made during [the officer's] initial investigation" may be testimonial. *Clark*, 165 N.C. App. at 284, 598 S.E.2d at 217; *State v. Lewis*, 166 N.C. App. 596, 601, 603 S.E.2d 559, 562, *disc. review granted*, 359 N.C. 195, 608 S.E.2d 60 (2004); *see also State v. Morgan*, 359 N.C. 131, 155-56, 604 S.E.2d 886, 901 (2004). By contrast, in *State v. Forrest*, our Court held

that statements to a police officer made during the initial investigation were not testimonial when the witness "was not providing a formal statement, deposition, or affidavit, was not aware that she was bearing witness, and was not aware that her utterances might impact further legal proceedings." *State v. Forrest*, 164 N.C. App. 272, 280, 596 S.E.2d 22, 27 (2004), *aff'd*, 359 N.C. 424, 611 S.E.2d 833 (2005). Thus, whether "interrogation" encompasses a statement made in response to police questioning at the scene of a crime is a factual question that must be determined on a case-by-case basis. *See State v. Sutton*, 169 N.C. App. 90, 97, 609 S.E.2d 270, 275 (2005) (determining whether the police questioning of a victim at the crime scene constituted an "interrogation").

The State argues that the present case can be analogized to *Forrest* because Santos and Dominguez made their statements while under the stress of the shootings and without being aware that their "utterances might impact further legal proceedings." In *Forrest*, the declarant made statements to the police immediately upon being rescued by them, after she was kidnapped and assaulted. *Forrest*, 164 N.C. App. at 280, 596 S.E.2d at 27. While the declarant was making her statement, she was "nervous, shaking, and crying" and "[h]er demeanor never changed during the conversation with [the police officer]." *Id.* We compared the declarant's statement in *Forrest* to a 911 call, stating that "a spontaneous statement made to police immediately after a rescue can be considered 'part of the criminal incident itself, rather than as part of the prosecution that follows.' " *Id.* (quoting *People v. Moscat*, 777 N.Y.S.2d 875 (NY 2004)). We further stated that "*Crawford* protects defendants from an absent witness's statements introduced after formal police interrogations in which the police are gathering additional information to further the prosecution of a defendant. *Crawford* does not prohibit spontaneous statements from an unavailable witness like those at bar." *Forrest*, 164 N.C. App. at 280, 596 S.E.2d at 27.

However, as defendant points out, the statements in *Forrest* were spontaneously made to the police when the police responded to a 911 call and were initiated by the victim/declarant, unlike the statements in this case. *See Forrest*, 164 N.C. App. at 280, 596 S.E.2d at 27. In light of our Court's recent *Sutton* opinion, we agree with defendant's argument. *See Sutton*, 169 N.C. App. at 98, 609 S.E.2d at 275. In *Sutton*, we found a statement made at the crime scene by the victim of the crime to be testimonial when the victim's statement was "neither spontaneous nor unsolicited." *Id.* As in the present case, the challenged

statement in *Sutton* was originally admitted into evidence at trial under the excited utterance exception to hearsay[2] because it was found that the victim "was still operating under the shock of the horrible events of the night." *Id.* The police questioning in *Sutton* was found to constitute an "interrogation" not only because the police approached and questioned the victim, but also because the challenged statement was the second statement the victim gave to the police that night, and thus "an objective witness would reasonably believe . . . that the statement would be available for use at trial." *Id.*

Though the facts of the present case indicate that Santos and Dominguez were still operating under the stress of the shootings, neither Santos nor Dominguez spontaneously initiated their statements to Officer Barros. Rather, the statements were elicited by the police twenty minutes after the shootings occurred. Unlike in *Sutton* where the challenged statement was the witness's second statement to the police, Officer Barros's "arrival at the scene offered [Santos and Dominguez] their first opportunity to convey the events of the shootings." *Allen,* 162 N.C. App. at 593, 592 S.E.2d at 37. However, the twenty minutes between the shootings and Officer Barros's arrival provided enough time for Santos and Dominguez to reflect on the shootings before they conversed with Officer Barros. Having more time to reflect makes it more probable that an objective witness, when subsequently questioned by the police, "would reasonably believe . . . that the statement would be available for use at trial." *See Sutton,* 169 N.C. App. at 98, 609 S.E.2d at 275.

Furthermore, unlike the situation in *Forrest*, the witnesses in the present case were not "rescued" by Officer Barros. In *Forrest*, the police arrived while the defendant was in a house with the victim; they observed the defendant hold a knife to the victim's throat and were initially concerned with securing the peace and protecting the victim, rather than collecting evidence to solve a crime. *Forrest,* 164 N.C. App. at 273-74, 596 S.E.2d at 23-24. As mentioned above, the

---

2. We recognize that, after *Crawford,* whether a statement qualifies as an excited utterance is not a factor in our Confrontation Clause analysis. *See Forrest,* 164 N.C. App. at 280, 596 S.E.2d 22, 25-28 (demonstrating that, when a defendant's right to confrontation is implicated, whether a statement qualifies as an exception to hearsay is relevant only upon a finding that the statement was not testimonial); *see also Morgan,* 359 N.C. at 154, 604 S.E.2d at 900 (analyzing statements as exceptions to hearsay when the defendant did not argue that *Crawford* applied to a particular statement). Based on the particular circumstances of a case, statements that could be characterized as being excited utterances may or may not be testimonial.

victim's statements in *Forrest* were made to the police immediately upon being rescued, and the statements were thereby considered "part of the criminal incident itself[.]" *Id.* at 280, 596 S.E.2d at 27. In the present case, the challenged statements were not given during the "criminal incident itself," but rather after the apartment had been secured and the threat of danger to Santos and Dominguez was no longer immediate. Officer Barros arrived twenty minutes after the shootings, and ten minutes after the first police officer arrived on the scene. Officer Barros's primary focus would have been to investigate the crime and he would have had "an eye toward trial" when he questioned Santos and Dominguez. *See Sutton*, 169 N.C. App. at 98, 609 S.E.2d at 275.

Under these facts, Officer Barros's questioning of Santos and Dominguez amounted to interrogation, and Santos and Dominguez reasonably believed that their statements would be used prosecutorially. Thus, the challenged statements were testimonial. Since it is undisputed that both Santos and Dominguez were unavailable and that defendant did not have an opportunity to cross-examine either declarant, defendant's Sixth Amendment right to confrontation was violated by the admission of their statements through Officer Barros's testimony at trial.

However, a violation of defendant's confrontation rights does not necessarily result in a new trial. "A violation of the defendant's rights under the Constitution of the United States is prejudicial unless the appellate court finds that it was harmless beyond a reasonable doubt. The burden is upon the State to demonstrate, beyond a reasonable doubt, that the error was harmless." N.C. Gen. Stat. § 15A-1443(b) (2003). "[T]he presence of overwhelming evidence of guilt may render error of constitutional dimension harmless beyond a reasonable doubt." *State v. Autry*, 321 N.C. 392, 400, 364 S.E.2d 341, 346 (1988). In the present case, the evidence of defendant's guilt, even without considering the statements made by Santos and Dominguez, is overwhelming.

Defendant argues that the statements made by Santos and Dominguez were prejudicial in that they provided the only evidence of an attempted robbery. However, two of the State's witnesses, Hairston and Grooms, testified that they, along with defendant, Gillespie and Gaines, were involved in a plan to rob Noyola. Specifically, Hairston testified that on 27 January 1998, Gillespie had told Hairston that Gillespie had a "lick," or a robbery, that he wanted Hairston to help him commit. Hairston further testified that he agreed

to participate, grabbed his gun, and went with Gillespie to the vehicle where defendant and Gaines were waiting. Hairston stated that the men discussed the robbery on their way to defendant's aunt's house, but that the robbery had been defendant's and Gillespie's idea. Hairston further testified that defendant not only participated in the planning of the robbery, but also provided the vehicle and the directions to the apartment. Hairston testified that when they arrived at the apartment, Gaines walked toward the back of the building and Hairston, defendant and Gillespie approached the apartment from the front.

Grooms testified that he agreed to drive the car for a "lick" that Gillespie wanted to commit. Grooms did not want to drive his vehicle, so Gillespie talked to defendant and then asked Grooms if Grooms would mind driving defendant's aunt's vehicle. Like Hairston, Grooms testified that Gaines went behind the apartment building, and that defendant, Hairston, and Gillespie approached from the front. Both Hairston and Grooms testified that defendant was armed with an assault rifle and that Gillespie had a nine millimeter gun when they entered the apartment. Contrary to defendant's argument, the testimony of Hairston and Grooms amply demonstrates that defendant intended to commit a robbery.

Furthermore, other evidence presented at trial supports the jury's guilty verdict. Dr. Lantz testified that Noyola's wounds were consistent with a high-velocity bullet from a rifle, and that the cause of death was a gunshot wound to the abdomen. The six-year-old girl's wounds were consistent with a bullet from a nine millimeter gun. Defendant's testimony corroborated the testimony of the other witnesses in that defendant admitted that he was carrying an assault rifle into the apartment, and that Noyola fell after defendant pulled the rifle's trigger. The sum of this evidence supports defendant's guilt to the extent that the trial court's error in admitting the testimonial hearsay of Santos and Dominguez was harmless beyond a reasonable doubt.

Defendant also argues that Santos's identification of Gillespie from the photographic lineup was testimonial because it was made in response to police questioning the day after the killings. We agree. In *State v. Lewis*, we held out-of-court identifications from photographic lineups to be testimonial, stating:

In substance, the information obtained from a photo line-up is not very different from other evidence that is classified as testimonial under *Crawford*. Indeed, the photo line-up is very similar to the

ex parte and extra-judicial examinations by government officials which *Crawford* makes clear the Sixth Amendment was meant to address.

*Lewis,* 166 N.C. App. at 602, 603 S.E.2d at 563 (citing *Crawford,* 541 U.S. at 51-52, 158 L. Ed. 2d at 192-93). Moreover, as a photographic lineup has the clear purpose of collecting evidence for prosecution and a person being faced with a photographic lineup must know that his or her identification will be used for prosecution, there is not the same factual question as to whether such an identification is testimonial as discussed above. Thus, the admission of the photographic lineup identification when Santos was not available to testify and defendant did not have the opportunity to confront Santos about this identification did violate defendant's right to confront his accuser under the Sixth Amendment.

However, again the State demonstrates that this error was harmless beyond a reasonable doubt. The State asserts that even though Officer Barros testified that Santos identified a photograph of Gillespie as being the person who shot her daughter, this evidence "did not directly implicate defendant for the murder of Feliciano Noyola." This evidence may have prejudiced defendant in that it corroborated the testimony of Hairston and Grooms, showing that Gillespie was present in the apartment when the shooting occurred. However, defendant himself testified that Gillespie was present with him and that shots were fired in the apartment. Also, the facts that neither Santos nor Dominguez identified defendant, and that defendant was convicted for Noyola's murder and not for the murder of the six-year-old girl, indicate that the admission of this identification was harmless beyond a reasonable doubt. *Cf State v. Herrmann,* 679 N.W.2d 503, 510 (S.D. 2004) (finding the admission of an out-of-court statement harmless, even if testimonial, because the statement did not implicate the defendant as the perpetrator and because there was substantial DNA evidence against the defendant).

For the foregoing reasons, upon review in light of *Crawford,* we find no prejudicial error.

No prejudicial error.

Judges HUNTER and CALABRIA concur.