STATE OF NORTH CAROLINA v. ROBIN STACY SMITH

No. 8714SC968

(Filed 17 May 1988)

**1. Automobiles and Other Vehicles § 110— misdemeanor death by a vehicle — criminal intent not required — constitutionality**

    The misdemeanor death by a vehicle statute, N.C.G.S. § 20-141.4(a2), does not violate due process because it imposes criminal liability without requiring a finding of criminal intent. Fourteenth Amendment to the U.S. Constitution; Art. I, § 19 of the N.C. Constitution.

**2. Automobiles and Other Vehicles § 110— misdemeanor death by vehicle — ordinary negligence — constitutionality**

    A conviction of misdemeanor death by vehicle under N.C.G.S. § 20-141.4(a2) may constitutionally be based upon a finding of ordinary negligence, and the statute was constitutional as applied to defendant where the jury's finding of guilt necessarily included a finding that defendant was negligent in violating N.C.G.S. § 20-150(a), the statute prohibiting the overtaking and passing of another vehicle unless the pass can be made in safety.

**3. Criminal Law § 142.4— death by vehicle — $500,000 restitution as probation condition — ability of defendant to pay**

    The trial court erred in ordering defendant to pay $500,000 in restitution to the victim's next of kin as a condition of probation for misdemeanor death by vehicle where the court failed to consider defendant's ability to pay and defendant clearly cannot comply with this probation condition. N.C.G.S. § 15A-1343(d).

**4. Criminal Law § 142.4— death by vehicle — restitution as condition of probation — victim's annual salary as basis**

    While the trial court properly used the wrongful death statute to compute the amount of restitution to be paid to a death by vehicle victim's parents as a condition of defendant's probation, the trial court erred in using the victim's annual salary as a base figure for the restitution since the victim's parents could only recover the amount of the victim's income that they reasonably might have received had he lived, and no evidence was presented as to such amount.

APPEAL by defendant from *Brannon (A. M.), Judge.* Judgment entered 14 May 1987 in Superior Court, DURHAM County. Heard in the Court of Appeals 8 March 1988.

Defendant was charged with misdemeanor death by vehicle under G.S. 20-141.4(a2) arising out of an automobile collision that resulted in the death of Donald Asbill. At the time of the accident, defendant was driving a car and Asbill was driving a motor-

cycle in the opposite direction on a two-lane road. The collision took place in Asbill's lane of travel when defendant attempted to pass a car in front of her. Defendant was found guilty of that offense in District Court and she appealed to Superior Court. Before her trial in Superior Court, defendant moved to dismiss the charge on the grounds that G.S. 20-141.4(a2) is unconstitutional. The motion was denied, and the jury found defendant guilty of death by vehicle. The trial court sentenced defendant to a two-year suspended sentence with five years' supervised probation. As a condition of her probation, defendant was ordered to pay restitution in the amount of $500,000. Defendant appeals.

*Attorney General Lacy H. Thornburg, by Associate Attorney General Linda Anne Morris, for the State.*

*Loflin and Loflin, by Dean A. Shangler, for defendant-appellant.*

PARKER, Judge.

Defendant first assigns error to the trial court's denial of her motion to dismiss the charge of death by vehicle. Defendant's remaining assignments of error concern the requirement in the trial court's judgment that she pay restitution in the amount of $500,000 as a condition of her probation.

[1] Defendant contends that G.S. 20-141.4(a2) is invalid under both the North Carolina and United States Constitutions because it imposes criminal liability without requiring a finding of criminal intent. General Statute 20-141.4(a2) provides:

> Misdemeanor Death by Vehicle. — A person commits the offense of misdemeanor death by vehicle if he unintentionally causes the death of another person while engaged in the violation of any State law or local ordinance applying to the operation or use of a vehicle or to the regulation of traffic, other than impaired driving under G.S. 20-138.1, and commission of that violation is the proximate cause of the death.

Misdemeanor death by vehicle is punishable by imprisonment of not more than two years, a fine of not more than $500, or both. G.S. 20-141.4(b).

Defendant argues that G.S. 20-141.4(a2) violates the due process clause of the fourteenth amendment to the United States Constitution and the "law of the land" clause in article I, § 19 of the North Carolina Constitution. These two clauses are synonymous. *Watch Co. v. Brand Distributors and Watch Co. v. Motor Market*, 285 N.C. 467, 474, 206 S.E. 2d 141, 146 (1974). In construing the "law of the land" clause, decisions of the United States Supreme Court concerning federal due process are highly persuasive, but not binding on the courts of this State. *Id.*

As a matter of both State and federal constitutional law, legislatures may make the doing of an act a criminal offense even in the absence of criminal intent. *See United States v. Balint*, 258 U.S. 250, 42 S.Ct. 301, 66 L.Ed. 604 (1922); *State v. Hales*, 256 N.C. 27, 30, 122 S.E. 2d 768, 771, 90 A.L.R. 2d 804, 808 (1961); *State v. Howard*, 78 N.C. App. 262, 273, 337 S.E. 2d 598, 605 (1985), *disc. rev. denied and appeal dismissed*, 316 N.C. 198, 341 S.E. 2d 581 (1986). Defendant contends, however, that a criminal conviction without a finding of criminal intent is constitutionally permissible only when the punishment is slight and the conviction does not carry any moral stigma. In *Poultry Co. v. Thomas*, 289 N.C. 7, 220 S.E. 2d 536 (1975), our Supreme Court stated:

> Both federal and state courts have specifically held that it is not a violation of due process to punish a person for certain crimes related to the public welfare or safety even when the person is without knowledge of the facts making the act criminal. This is particularly so when the controlling statute does not require the act to have been done knowingly or willfully. [Citations omitted]. The bases for the inclusion of violations of motor vehicle and traffic laws within the scope of this rule are that (1) the requirement of proving intent or guilty knowledge would make it impossible to enforce such laws in view of the tremendous number of petty offenses growing out of the host of motor vehicles upon our roads and (2) the punishments for such violations are usually a small fine. *We would not extend the rationale of this rule beyond petty offenses involving light punishment nor would we extend its operation to any crime involving moral delinquency.*

289 N.C. at 14-15, 220 S.E. 2d at 541-42 (emphasis added); *see also Morissette v. United States*, 342 U.S. 246, 256, 72 S.Ct. 240, 246,

96 L.Ed. 288, 297 (1952) (statutes may be construed to dispense with the requirement of intent when the penalties are small and conviction does no great damage to the offender's reputation).

Defendant contends that a finding of traditional criminal intent is constitutionally required to support her conviction. Defendant relies principally on the statements of our Supreme Court in *Poultry Co. v. Thomas, supra,* and of the United States Supreme Court in *Morissette v. United States, supra,* to the effect that criminal intent must be an element of all criminal offenses except petty crimes. Even assuming for purposes of argument that a violation of G.S. 20-141.4(a2) is not a "petty offense," we are of the opinion that the cited cases do not require us to hold that G.S. 20-141.4(a2) is unconstitutional as applied to defendant.

As a basic premise, the statute is presumed to be constitutional. *In re Banks,* 295 N.C. 236, 239, 244 S.E. 2d 386, 388 (1978). Moreover, contrary to defendant's contentions, the United States Supreme Court has not decided that due process of law requires a finding of criminal intent to support a conviction of a non-petty offense. The Court in *Morissette v. United States* was not considering the constitutionality of a statute, but was determining whether a criminal statute should be construed to require criminal intent when no intent was specified in the statute. 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288; *see also United States v. United States Gypsum Co.,* 438 U.S. 422, 437-38, 98 S.Ct. 2864, 2873-74, 57 L.Ed. 2d 854, 869-70 (1978) (when statute is silent as to intent, requirement of criminal intent is presumed).

When considering the constitutional limitations on the power of state legislatures to define criminal offenses, the Court has stated: "There is wide latitude in the lawmakers to declare an offense and to exclude elements of knowledge and diligence from its definition." *Lambert v. California,* 355 U.S. 225, 228, 78 S.Ct. 240, 242, 2 L.Ed. 2d 228, 231 (1957). The Supreme Court has found in some instances that due process requires a finding of criminal intent, but those cases are clearly distinguishable from the present case. *Lambert v. California, supra* (state could not criminalize a mere failure to act without showing that defendant knew of duty to act); *Smith v. California,* 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed. 2d

205 (1959) (criminal intent constitutionally required where freedom of speech is affected).

Similarly, our own Supreme Court's statements in *Poultry Co. v. Thomas* do not support defendant's contentions. Like the Court in *Morissette*, the Court in *Poultry Co.* was not ruling on the constitutionality of a statute. *Poultry Co.* was a negligence action in which the Court held that the plaintiff's violation of a traffic statute was negligence per se even though he was unaware of the facts constituting the violation. *Poultry Co.*, 289 N.C. at 15, 220 S.E. 2d at 542. The Court's statement to the effect that it would not extend its reasoning to more serious offenses was unnecessary to its decision and, as dictum, does not constitute binding precedent. *See In re University of North Carolina*, 300 N.C. 563, 576, 268 S.E. 2d 472, 480 (1980).

Even if we were bound by the language in *Poultry Co.*, that case is readily distinguishable. The issue in *Poultry Co.* was whether the plaintiff could be held responsible for his violation of G.S. 20-150(c), which prohibits passing at intersections in cities or towns. The constitutionality of that statute was questioned when it was applied to a motorist who neither knew nor had reason to know that he was within city limits at the time of the violation. *Poultry Co. v. Thomas*, 289 N.C. at 19, 220 S.E. 2d at 544 (Sharp, C.J., dissenting). The issue in *Poultry Co.* was essentially whether the defense of mistake of fact was applicable to the offense. *See State v. Atwood*, 290 N.C. 266, 274-75, 225 S.E. 2d 543, 547-48 (1976) (Exum, J., concurring). In the present case, defendant's conviction is not based upon facts that she had no way of knowing. To the contrary, her conviction based upon a violation of G.S. 20-150(a) shows that the jury found that she should have known that the pass could not be made in safety.

[2] We next consider whether, as defendant contends, G.S. 20-141.4(a2) is a strict liability offense that imposes criminal liability without regard to the offender's state of mind. The degree of culpability required to support a conviction for misdemeanor death by vehicle has never precisely been defined by our courts. This Court has held that "criminal responsibility for death by vehicle is not dependent upon the presence of culpable or criminal negligence." *State v. Freeman*, 31 N.C. App. 93, 97, 228 S.E. 2d 516, 519, *disc. rev. denied*, 291 N.C. 449, 230 S.E. 2d 766 (1976).

Criminal or culpable negligence is something more than ordinary negligence in the law of torts. *Id.* at 96, 228 S.E. 2d at 518. Defendant contends that G.S. 20-141.4(a2) does not require even ordinary negligence. The trial court in this case instructed the jury that the statute "imposes absolute liability without regard to negligence." Defendant does not assign error to the court's instruction, but argues that it was a correct statement of the law.

Although the jury was not required to find that defendant was negligent, the trial court did instruct it that defendant could not be convicted unless the State proved beyond a reasonable doubt that she had violated a provision of the North Carolina Motor Vehicle Code and that the violation proximately caused the victim's death. Specifically, the jury was required to find that defendant violated G.S. 20-150(a), which provides that a driver shall not overtake and pass another vehicle unless the pass can be made in safety. A violation of G.S. 20-150(a) is negligence per se. *Rouse v. Jones*, 254 N.C. 575, 579, 119 S.E. 2d 628, 632 (1961). Thus, the jury's finding of guilt necessarily included a finding that defendant was negligent.

Recognizing that the language of G.S. 20-141.4(a2) could permit a conviction to be based upon the violation of a traffic ordinance that is not negligence per se, we are limited in our review to a consideration of the constitutionality of the statute as applied to the facts of this case. *Watch Co. v. Brand Distributors and Watch Co. v. Motor Market*, 285 N.C. at 472, 206 S.E. 2d at 145. Therefore, our decision here is limited to the question of whether a conviction under G.S. 20-141.4(a2) may be based upon a finding of ordinary negligence, and we express no opinion as to the constitutionality of the statute as applied to a non-negligent offender.

Several other jurisdictions permit convictions under vehicular homicide statutes based upon a showing of ordinary negligence. Annotation, *What Amounts to Negligence Within Meaning of Statutes Penalizing Negligent Homicide by Operation of a Motor Vehicle*, 20 A.L.R. 3d 473 (1968). Our research discloses only one case in which a state court has held that such a statute was unconstitutional because it imposed criminal liability for negligent behavior. *Commonwealth v. Heck*, 341 Pa. Super. 183, 491 A. 2d 212 (1985), *aff'd*, --- Pa. ---, 535 A. 2d 575 (1987). In affirming the

order of the Pennsylvania Superior Court, however, the Pennsylvania Supreme Court rejected the Superior Court's constitutional analysis, *Commonwealth v. Heck*, --- Pa. at ---, 535 A. 2d at 576, and rested its decision on a construction of the applicable statute which did not permit a conviction to be based upon ordinary negligence. *Id.* at ---, 535 A. 2d at 579. Other state courts that have considered the question have ruled that it is constitutionally permissible to base a vehicular homicide conviction on ordinary negligence. *State v. Russo*, 38 Conn. Supp. 426, 431-32, 450 A. 2d 857, 862 (1982); *People v. McKee*, 15 Mich. App. 382, 166 N.W. 2d 688 (1968).

We are aware that basing a serious offense on ordinary negligence may not be consistent with traditional theories of criminal justice. Regardless of the wisdom of the challenged statute, however, we cannot overturn it unless it conflicts with some provision of the State or Federal Constitutions. *State v. Brewer*, 258 N.C. 533, 545-46, 129 S.E. 2d 262, 271, 1 A.L.R. 3d 1323, 1336, *appeal dismissed*, 375 U.S. 9, 84 S.Ct. 72, 11 L.Ed. 2d 40 (1963). Accordingly, we hold that G.S. 20-141.4(a2) is not unconstitutional as applied to this defendant.

Defendant's remaining assignments of error relate to the trial court's conditioning of her probation on the payment of $500,000 as restitution. General Statute 15A-1343(d) permits the conditioning of probation on payment of restitution "to an aggrieved party or parties who shall be named by the court for the damage or loss caused by the defendant arising out of the offense or offenses committed by the defendant." In this case, the court named the victim's mother as the aggrieved party to whom restitution would be made.

[3] Defendant first contends that the trial court erred in failing to consider her ability to make the required payments. The statute in effect at the time of defendant's conviction provided in pertinent part:

When restitution or reparation is a condition imposed, the court shall take into consideration the resources of the defendant, his ability to earn, his obligation to support dependents, and such other matters as shall pertain to his ability to make restitution . . . .

G.S. 15A-1343(d) (amended effective 1 October 1987). The transcript of the sentencing hearing shows that the trial court did not consider any evidence of defendant's financial condition. The trial judge stated that he did not know whether defendant had a job. The trial judge did know that defendant had small children and that her counsel was court appointed.

The State relies on *State v. Hunter*, 315 N.C. 371, 338 S.E. 2d 99 (1986) in which the Court upheld a restitution order under similar circumstances. The Court in *Hunter* held that G.S. 15A-1343(d) does not require the trial judge to make findings of fact as to the defendant's ability to pay. *Hunter*, 315 N.C. at 376, 338 S.E. 2d at 103. In *Hunter*, however, the amount of restitution was only $919.25. In this case, defendant would have to pay $100,000 per year to comply with her probation condition. Her probation could be extended by as much as three years to enable her to complete the program of restitution. G.S. 15A-1342(a). Even over a period of eight years, however, she would have to pay $62,500 per year.

Common sense dictates that only a person of substantial means could comply with such a requirement. General Statute 15A-1343(d) provides that "the court may order partial restitution . . . when it appears that the damage or loss caused by the offense . . . is greater than that which the defendant is able to pay." This case clearly comes within the above statutory provision, and the trial court erred in imposing a condition on defendant's probation with which she clearly cannot comply.

[4] Defendant next contends that the trial court erred in basing its restitution order on the damages recoverable for wrongful death under G.S. 28A-18-2. General Statute 15A-1343(d) defines "restitution" as "compensation for damage or loss as could ordinarily be recovered by an aggrieved party in a civil action . . . ." The victim in this case had no wife or children, thus his parents could recover damages for wrongful death. G.S. 28A-18-2(a); G.S. 29-15(3). Although the trial court properly used the wrongful death statute to compute the amount of restitution, it erred in its application of G.S. 28A-18-2.

The record shows that the trial court determined the amount of restitution by taking the victim's approximate gross annual wages of $25,000, multiplying that figure by the anticipated life span of the victim's parents (thirty years according to statutory

State v. Smith

mortuary tables) to reach $750,000, and reducing that figure to a present worth of $500,000. The reasonably expected net income of the decedent can be recovered in a wrongful death action. G.S. 28A-18-2(b)(4). Although the trial court here used the victim's gross income, the court also had to consider other recoverable damages, such as loss of companionship, which are not susceptible to computation. *See Brown v. Moore*, 286 N.C. 664, 673, 213 S.E. 2d 342, 348-49 (1975).

The trial court properly used the lifespans of the victim's parents to compute the damages. *Bowen v. Rental Co.*, 283 N.C. 395, 420, 196 S.E. 2d 789, 806 (1973). The court erred, however, in using the victim's annual salary as a base figure. Under G.S. 28A-18-2(b)(4), only the "reasonably expected" net income of the decedent can be recovered. The victim's parents could only recover the amount of his income that they reasonably might have received had he lived. *See Bowen v. Rental Co.*, 283 N.C. at 419-20, 196 S.E. 2d at 805-06; *see also Carver v. Carver*, 310 N.C. 669, 683, 314 S.E. 2d 739, 747 (1984).

No evidence was presented at the sentencing hearing to show that either of the victim's parents reasonably expected to receive any, let alone all, of his income. Since the restitution order is not supported by the evidence, it cannot be allowed to stand. *See State v. Burkhead*, 85 N.C. App. 535, 355 S.E. 2d 175 (1987).

For the reasons stated above, we affirm defendant's conviction, but we vacate that portion of the judgment requiring defendant to pay restitution in the amount of $500,000 and remand the case to the trial court to determine an amount of restitution consistent with this opinion.

No error in the trial; judgment vacated in part and remanded.

Judges ARNOLD and BECTON concur.