STATE OF NORTH CAROLINA v. SHELDON LEE SUTTON

No. COA04-101

(Filed 15 March 2005)

**1. Constitutional Law— effective assistance of counsel—failure to request recordation—failure to request limiting instruction**

Defendant did not receive ineffective assistance of counsel in a first-degree murder, attempted robbery with a dangerous weapon, and assault with a deadly weapon with intent to kill inflicting serious injury case based on his trial attorney's failure to request recordation of jury selection, opening statements, and closing arguments, as well as his attorney's failure to request a limiting instruction regarding evidence that defendant was arrested for carrying a knife, because: (1) assuming arguendo that defendant's attorney should have requested recordation of jury selection and opening and closing arguments, defendant makes no argument that there was any prejudicial conduct in these portions of the trial and the record is devoid of any objection made by defendant as to the State's closing argument; and (2) assuming arguendo that defendant's attorney should have requested a limiting instruction when testimony was received showing defendant was arrested at an earlier time for carrying a knife, defendant failed to show any prejudice when the evidence was offered for the purpose of identifying defendant as the perpetrator and there was plenary testimony by the State's witnesses, as well as by defendant himself, that defendant was in the habit of carrying a knife.

**2. Constitutional Law— right to confront witnesses—interrogation—unavailable witness—excited utterance**

The trial court did not commit plain error by violating defendant's Sixth Amendment right to confront witnesses against him in a first-degree murder, attempted robbery with a dangerous weapon, and assault with a deadly weapon with intent to kill inflicting serious injury case when it allowed one of the victim's statements to police to be admitted into evidence as an excited utterance when she did not testify at trial, because: (1) although the police questioning of the witness was interrogation, meaning the statement produced by that questioning was testimonial and the trial court erred by providing no opportunity for defendant to

STATE v. SUTTON

[169 N.C. App. 90 (2005)]

cross-examine the witness on the contents of the statement, there was plenary evidence of defendant's guilt; and (2) there was substantial evidence that defendant was the primary participant in the murder, robbery, and assault even though the jury only needed to find beyond a reasonable doubt that defendant and his coparticipant acted together with a common purpose to rob the victims that night since the jury was instructed on acting in concert.

Appeal by defendant from judgment entered 24 July 2003 by Judge Steve A. Balog in Craven County Superior Court. Heard in the Court of Appeals 22 September 2004.

*Attorney General Roy Cooper, by Special Deputy Attorney General A. Daneille Marquis, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Charlesena Elliott Walker, for defendant-appellant.*

STEELMAN, Judge.

Defendant was found guilty by a jury of first-degree murder, attempted robbery with a dangerous weapon and assault with a deadly weapon with intent to kill inflicting serious injury on 24 July 2003.

In the summer of 1998, defendant and Vernon Deon Forrest (Forrest) lived together with their respective girlfriends, Iesha Gay (Gay) and Rose Sutton (Sutton) in an apartment in New Bern. On the night of 30 July 1998, defendant and Forrest left the apartment on foot and walked the streets of New Bern together for several hours. At approximately midnight the two men found themselves in a cemetery which was frequently used as a short-cut for local residents. In the cemetery defendant and Forrest came upon Elvis Gallagher (Elvis) and his wife Margaret Gallagher (Margaret) who were walking through the cemetery. Defendant and Forrest attempted to rob the Gallaghers. Elvis was stabbed in his upper torso and Margaret received a cut on her arm and a deep cut across her throat. Elvis died of his wounds, but Margaret survived. Both defendant and Forrest admitted to having been present at the time of the attempted robbery and assault, but each accused the other of having assaulted the Gallaghers.

That night Gay and Sutton were sitting on the front porch of their apartment waiting for their boyfriends to return when they saw two

figures in dark clothing running towards the apartment. Both women testified that Forrest had a large bloodstain on his white undershirt. Gay also noticed that the front of defendant's shirt was wet with something, but because the shirt was dark in color, she could not tell if it was blood. Sutton did not notice anything unusual about defendant's clothing, but both women testified that defendant and Forrest took off their clothes and washed them shortly after returning to the apartment. The women testified that they were present during a conversation between defendant and Forrest where the men discussed the murder and assault, and acted out how it happened. The two men stated that Forrest fought with Elvis while defendant attacked Margaret with a knife. Defendant then went to where Forrest and Elvis were fighting and stabbed Elvis once in the chest. Sutton testified that she found a bloody knife, which she recognized as belonging to defendant, in her book bag the following day. Gay testified that defendant admitted to her that they had killed two people that night (apparently believing Margaret had also died). Defendant told Gay that Forrest was fighting the man, and he was fighting the woman, who was screaming. According to Gay, Defendant told her that "he wanted [the woman] to shut up, and he, he said he had slit her throat." Defendant told Gay that he then ran over and stabbed the man in the chest as he was fighting with Forrest. Gay also testified that defendant liked knives, and that he frequently carried one. Defendant admitted that he sometimes carried a knife, and that he was arrested once for carrying a knife concealed in the sleeve of his coat. Following that arrest, defendant's knife was taken by the police. Gay stated that she accompanied defendant to K-Mart to replace the knife. Defendant denied carrying a knife on the night of the assault. On the same night following the assault, Gay saw the knife defendant bought at K-Mart on the floor of the bedroom she shared with defendant. She testified that the following morning she noticed the knife had blood on it. None of the testifying witnesses, including defendant, had ever seen Forrest carry a knife.

Margaret Gallagher did not testify at trial. A detective was dispatched to West Virginia to transport her back to North Carolina for the trial, but Margaret, who had mental disabilities, locked herself in her bedroom and refused to come to North Carolina and testify. The State moved to admit a statement Margaret had given to officers at the crime scene into evidence under the "excited utterance" exception to the hearsay rule. Defendant did not object to the admission of this statement, and the trial court admitted the statement into evidence.

STATE v. SUTTON

[169 N.C. App. 90 (2005)]

The statement was read to the jury at trial. Margaret stated that as she and Elvis were walking through the cemetery, they passed two African-American males, one wearing a dark shirt, dark pants, dark shoes with white soles and something over his head, and the other, in his twenties, also wearing dark clothing, with a goatee and a hoop style earring. She told police that the one wearing something on his head pulled a large knife out of his sock, grabbed her, threw her to the ground, and cut her arm before saying anything. He then demanded money. She dumped the contents of her purse onto the ground to show she had no money. The assailant then cut her throat. That assailant then went to where the other assailant was fighting with her husband and joined in the attack. Margaret ran screaming out of the cemetery.

Forrest testified that he and defendant had planned to rob a drug dealer to get some money, and left that night to scout out some possible areas for the robbery. However, he stated that there was no plan to rob anyone that particular night. He testified that while they sat in the cemetery resting and talking, they saw the Gallaghers walking by. According to Forrest, he said to defendant "let's go[,]" and they got up to leave. Defendant then said something that sounded like "F*** this" and grabbed Margaret by the hair and dragged her onto the grass. Forrest stated that he was shocked by this action, and wanted to help Margaret, but that Elvis attacked him. He broke away from Elvis, and was some distance away when defendant came over and stabbed Elvis. Forrest then ran out of the cemetery, and defendant followed. Defendant denied there was ever a plan to rob anyone, and testified that he was afraid of Forrest, that it was Forrest who attacked the Gallaghers, and that he turned and ran away once he realized what Forrest was doing.

The trial court instructed the jury on each of the crimes charged, and also instructed on the theory of acting in concert. The jury found defendant guilty of first-degree murder under the felony murder rule, but not under a theory of premeditation and deliberation. The jury also found defendant guilty of attempted robbery with a dangerous weapon and assault with a deadly weapon with intent to kill inflicting serious injury. The trial court imposed the mandatory sentence of life in prison without parole for the first-degree murder charge. The trial court arrested judgment on the attempted robbery and assault charges. Defendant appeals.

[1] In defendant's first and second assignments of error, he argues that his trial attorney's failure to request recordation of jury selection,

**STATE v. SUTTON**

[169 N.C. App. 90 (2005)]

opening statements, and closing arguments, as well as his attorney's failure to request a limiting instruction regarding evidence that defendant was arrested for carrying a knife amounted to ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments of the United States Constitution. We disagree.

> "When a defendant attacks his conviction on the basis that counsel was ineffective, he must show that his counsel's conduct fell below an objective standard of reasonableness." *State v. Braswell,* 312 N.C. 553, 561-62, 324 S.E.2d 241, 248 (1985). In order to meet this burden, a defendant must satisfy a two-part test:
>
> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*State v. Roache,* 358 N.C. 243, 279, 595 S.E.2d 381, 405 (2004). (*citing Strickland v. Washington,* 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693 (1984). "[C]ounsel is given wide latitude in matters of strategy, and the burden to show that counsel's performance fell short of the required standard is a heavy one for defendant to bear." *State v. Fletcher,* 354 N.C. 455, 482, 555 S.E.2d 534, 551 (2001), *cert. denied,* 537 U.S. 846, 154 L. Ed. 2d 73, 123 S. Ct. 184 (2002). "Moreover, this Court engages in a presumption that trial counsel's representation is within the boundaries of acceptable professional conduct." *Roache,* 358 N.C. at 280, 595 S.E.2d at 406 (citation omitted).

Defendant first argues that his attorney was ineffective in that he failed to request recordation of jury selection, opening statements, and closing arguments because recording these portions of the trial "would have shown whether the prosecutor used improper argument to persuade the jury to convict [defendant] of the charges."

Defendant does not assert that any such improper conduct actually occurred at trial. Assuming *arguendo* that defendant's attorney should have requested recordation of jury selection and opening and closing arguments, defendant makes no argument that there was any prejudicial conduct in these portions of the trial. The record in this

matter is devoid of any objection made by defendant as to the State's closing argument. Because defendant has failed to show any prejudice attributable to the failure of counsel to request recordation, there is no error. *State v. Stevenson*, 136 N.C. App. 235, 244, 523 S.E.2d 734, 739 (1999); *State v. Watts*, 77 N.C. App. 124, 127, 334 S.E.2d 400, 402 (1985). Defendant's first assignment of error is without merit.

Defendant argues in his second assignment of error that his attorney's failure to ask for a limiting instruction when testimony was received showing defendant was arrested at an earlier time for carrying a knife amounted to ineffective assistance of counsel. Assuming *arguendo* that defendant's trial counsel should have requested the limiting instruction, we hold defendant has failed to demonstrate any prejudice.

The State offered evidence of the prior arrest at trial pursuant to Rule 404(b) of the North Carolina Rules of Evidence for the purpose of identifying the defendant as the perpetrator. There was plenary testimony by the State's witnesses, as well as by defendant himself, that defendant was in the habit of carrying a knife. These same witnesses, including defendant, testified that they had never seen Forrest carry a knife. Defendant raises no objection to any of this testimony on appeal. The evidence of defendant's arrest for carrying a concealed knife was simply one more piece of evidence offered by the State to identify defendant as the person who cut Margaret's throat and stabbed Elvis in the chest.

There was no dispute at trial that both defendant and Forrest were present when the crimes occurred, and no dispute that only one of them wielded a knife that night. The only dispute was which one cut and stabbed the victims. This evidence tends to identify defendant as the perpetrator, as it shows that defendant was in the habit of carrying a knife, while other evidence tended to show that Forrest was not.

Gay's testimony, taken along with this evidence, is particularly relevant. She testified that after defendant's arrest, defendant's knife was confiscated. She then accompanied defendant to K-Mart to buy a replacement knife. This was the very same knife that she later saw, bloody, on the floor of defendant's room on the night of the murder. The evidence of defendant's arrest was properly admitted under Rule 404(b) for the purpose of identifying defendant as the perpetrator of the crimes.

Defendant argues that his counsel should have requested an instruction to the jury limiting their consideration of the evidence to identity. The evidence tended to show that defendant carried a knife, not that he was in the habit of using a knife. Additionally, the plenary evidence of defendant's penchant for knives greatly diminished any potential for prejudice. Based on these facts we cannot find that "counsel's errors [if any] were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Roache,* 358 N.C. at 279, 595 S.E.2d at 405. Defendant's argument fails the second prong of the *Strickland* test. Defendant's second assignment of error is without merit.

**[2]** In defendant's third assignment of error he argues that his Sixth Amendment right to confront witnesses against him was violated when the trial court allowed Margaret's statement to police to be admitted into evidence when she did not testify at trial. We note that defendant did not object to the admission of this statement at trial, and now argues that the admission of the statement by the trial court amounts to plain error requiring reversal of his conviction. We disagree.

The Confrontation Clause of the Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." This constitutional guarantee applies to both federal and state prosecutions. *Crawford v. Washington,* 541 U.S. 36, 42, 158 L. Ed. 2d 177, 187 (2004). The Confrontation Clause is primarily concerned with "testimonial" statements. *Id.* at 53, 158 L. Ed. 2d at 194. Statements are testimonial if they " 'were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial[.]' " *Id.* at 52, 158 L. Ed. 2d at 193 (citation omitted). "Statements taken by police officers in the course of interrogations are . . . testimonial under even a narrow standard." *Id.* The Confrontation Clause of the Sixth Amendment mandates that (with the possible exception of dying declarations) testimonial statements of witnesses absent from trial may only be admitted if the declarant is unavailable and the defendant has had a prior opportunity to cross-examine the witness. *Id.* at 59, 158 L. Ed. 2d at 197.

In the instant case, Margaret refused to testify. The trial court admitted her statement into evidence under Rule 803(2) of the North Carolina Rules of Evidence as an "excited utterance" ("A

statement describing or explaining an event or condition made while the declarant was under the stress of excitement caused by the event or condition"), finding that she was still operating under the shock of the horrible events of the night.

We assume *arguendo* that Margaret was unavailable to testify for the purposes of the Confrontation Clause. However, there is no dispute that the defendant did not have an opportunity to cross-examine Margaret about the statement entered into evidence. The question presented this Court is whether Margaret's statement to the police at the scene of the crime is testimonial for the purposes of the Confrontation Clause. Because "Statements taken by police officers *in the course of interrogations* are . . . testimonial under even a narrow standard[,]" *Id.* at 52, 158 L. Ed. 2d at 193 (emphasis added), we must determine if the police questioning of Margaret at the crime scene constituted an "interrogation." The United States Supreme Court in *Crawford* noted the following concerning its use of the word "interrogation":

> We use the term "interrogation" in its colloquial, rather than any technical legal, sense. Just as various definitions of "testimonial" exist, one can imagine various definitions of "interrogation," and we need not select among them in this case. [The declarant's] recorded statement, knowingly given in response to structured police questioning, qualifies under any conceivable definition.

*Id.* at 53 n.4, 158 L. Ed. 2d at 194 (citation omitted). The United States Supreme Court further noted:

> Involvement of government officers in the production of testimony with an eye toward trial presents unique potential for prosecutorial abuse—a fact borne out time and again throughout a history with which the Framers were keenly familiar. This consideration does not evaporate when testimony happens to fall within some broad, modern hearsay exception, even if that exception might be justifiable in other circumstances.

*Id.* at 56 n.7, 158 L. Ed. 2d at 196. When a police officer questions the victim of a crime, that officer clearly has "an eye toward trial" and to allow such testimony to be admitted at trial without affording the defendant the opportunity to cross-examine the witness does present an opportunity for abuse. This Court has previously held that police questioning of a witness was testimonial and thus impli-

cated *Crawford. State v. Clark*, 165 N.C. App. 279, 284, 598 S.E.2d 213, 217-18 (2004).

In this case, there is no dispute that the police approached Margaret and questioned her. Her statement was neither spontaneous nor unsolicited. It was, in fact, the second statement that she gave to police that night. An objective witness would reasonably believe on these facts that the statement would be available for use at trial.

We hold that the police questioning in the instant case was an interrogation, and thus the statement produced by that questioning was testimonial. The admission of Margaret's statement in this case, where there was no prior opportunity to cross-examine her on its contents, was in violation of the Confrontation Clause of the Sixth Amendment of the United States Constitution.

Because defendant did not object to the admission of the statement at trial, our review is limited to determining if the improper admission of the statement amounts to plain error. *See State v. Pullen*, 163 N.C. App. 696, 701, 594 S.E.2d 248, 252 (2004) ("In deciding whether an error by the trial court constituted plain error, 'the appellate court must examine the entire record and determine if the . . . error had a probable impact on the jury's finding of guilt.' ") (citations omitted). Plain error is error "so fundamental as to amount to a miscarriage of justice or which probably resulted in the jury reaching a different verdict than it otherwise would have reached." *State v. Bagley*, 321 N.C. 201, 213, 362 S.E.2d 244, 251 (1987), cert. denied, 485 U.S. 1036, 99 L. Ed. 2d 912, 108 S. Ct. 1598 (1988), *cited in State v. Parker*, 350 N.C. 411, 427, 516 S.E.2d 106, 118 (1999). This standard applies even though the error constituted a violation of the United States Constitution. *See Pullen*, 163 N.C. App. at 702, 594 S.E.2d at 252; *State v. Walker*, 316 N.C. 33, 340 S.E.2d 80 (1986).

In light of the plenary evidence of defendant's guilt, we hold that he has failed to meet his burden of proving plain error. Forrest identified defendant as the person who wielded the knife that night. Gay and Sutton's testimony that defendant confessed to the crimes corroborates Forrest. Both Gay and Sutton testified that defendant washed all the clothes he was wearing that night. They both testified that they saw a knife they identified as belonging to defendant the day following the murder, and that there was blood on it. Multiple witnesses testified that defendant had a habit of carrying knives. There was no evidence that Forrest routinely carried a knife. Gay testified that the front of defendant's shirt was wet that night, but she couldn't

determine what was on it because it was dark in color. She testified that both defendant and Forrest threatened her and Sutton to keep quiet. There was substantial evidence that defendant was the primary participant in the murder, robbery and assault.

Further, in order to convict defendant the jury did not have to believe the plenary evidence that it was he who actually cut Margaret and killed Elvis. Because they were instructed on acting in concert, the jury only needed to find beyond a reasonable doubt that defendant and Forrest acted together, with a common purpose to rob the Gallaghers that night.

Based on this evidence, we hold that defendant has not met his burden of proving that the improper admission of Margaret's statement "probably resulted in the jury reaching a different verdict than it otherwise would have reached." *Bagley*, 321 N.C. at 213, 362 S.E.2d at 251. This assignment of error is without merit.

Because defendant has not argued his other assignment of error in his brief, it is deemed abandoned. N.C.R. App. P. Rule 28(b)(6) (2003).

NO PREJUDICIAL ERROR.

Judges CALABRIA and GEER concur.