STATE OF NORTH CAROLINA v. JAVONNIE JAMES TATE

No. COA07-314

(Filed 18 December 2007)

**1. Sentencing— restitution—consideration of financial resources—ability to pay**

The trial court did not err in a robbery with a dangerous weapon, assault with a deadly weapon with intent to kill inflicting serious injury, and possession of a firearm by a felon case by ordering defendant to pay restitution in the amount of $40,588.60 even though defendant contends it failed to consider defendant's resources as required by N.C.G.S. § 15A-1340.36(a), because: (1) when there is some evidence as to the appropriate amount of restitution, the recommendation will not be overruled on appeal; (2) although the trial court did not make specific findings of fact concerning defendant's ability to pay restitution, such findings are not required under N.C.G.S. § 15A-1340.36(a), and the record revealed that the trial court considered defendant's financial ability to pay restitution; (3) the trial court was aware of defendant's age, employment situation, and living arrangements; and (4) defendant failed to present evidence showing that he would not be able to make the required restitution payments.

STATE v. TATE

[187 N.C. App. 593 (2007)]

**2. Constitutional Law— right to confrontation—hearsay—
nontestimonial evidence**

The trial court did not err in a robbery with a dangerous
weapon, assault with a deadly weapon with intent to kill inflicting
serious injury, and possession of a firearm by a felon case by
allowing various law enforcement officers to testify about the
assailant's and defendant's shared nickname of "Fats," when such
information was provided to the officers by a corporal who did
not testify at trial, because: (1) contrary to defendant's con-
tention, the statements do not constitution hearsay which is a
threshold condition for a Crawford and Confrontation Clause
analysis; (2) the testimony concerning the corporal's identifica-
tion of "Fats" as defendant was not offered for the truth of the
matter asserted, but rather to explain subsequent actions under-
taken by officers during the course of the investigation including
defendant's inclusion in photographic lineups presented to two
victims who both identified defendant as the assailant; and (3)
the evidence did not constitute testimonial evidence in violation
of defendant's rights under the Confrontation Clause.

Judge HUNTER concurring.

Appeal by defendant from judgments entered 28 July 2007 by
Judge A. Baddour in Durham County Superior Court. Heard in the
Court of Appeals 18 September 2007.

*Attorney General Roy A. Cooper, III, by Assistant Attorney
General Donald W. Laton, for the State.*

*Parish & Cooke, by James R. Parish, for defendant-appellant.*

JACKSON, Judge.

Javonnie James Tate ("defendant") appeals from a judgment
entered upon convictions for robbery with a dangerous weapon,
assault with a deadly weapon with intent. to kill inflicting serious
injury, and possession of a firearm by a felon. For the reasons stated
herein, we hold no error.

The evidence tended to show that at approximately 4:00 a.m. on
8 September 2005, Steven Lamont Thomas ("Thomas") and Adam
Bagby ("Bagby") were standing outside a liquor house in Thomas'
neighborhood. Defendant, whom Thomas and Bagby recognized and
knew by the nickname "Fats," approached Thomas and demanded

STATE v. TATE

[187 N.C. App. 593 (2007.)]

that he relinquish the necklace that he was wearing. Defendant brandished a gun, and Thomas removed the necklace. After taking the necklace from Thomas, defendant shot Thomas. Thomas and Bagby then "took off and started running up the street," and defendant continued shooting at them. Bagby and Thomas hid between houses, and Bagby observed that Thomas "just had a whole bunch of blood coming out of him."

When Durham police officers arrived, Bagby directed them to Thomas' location. Officer N.J. Hamilton ("Officer Hamilton") found Thomas "sitting on the side of [a] house bleeding from his abdomen." Both Bagby and Thomas informed Officer Hamilton that Fats had shot Thomas. When Officer A.C. Rogers ("Officer Rogers") arrived, he found Thomas lying on the ground, bleeding from his stomach, in a significant amount of pain, and "in a chaotic state." Officer Rogers then spoke with several witnesses, including Monica Pettiford, who explained that "some individuals had pulled up in a black sedan, stepped out of the car, interacted with the—the victim. And the shooter, in particular, had stepped out of the vehicle, interacted with the victim, shot him. Then got back into the vehicle and the vehicle fled."

Investigator Michele Soucie ("Investigator Soucie") arrived at the scene of the shooting and spoke first with Officer Hamilton, who informed her that Thomas "had stated that Fats was the one who had shot him." During her investigation, Investigator Soucie saw to the recovery of Thomas' bloody clothes, other items of Thomas' personal property, four shell casings, and a spent round, which was located several feet from Thomas' hat and which appeared to have blood on it. Consistent with the physical evidence, Thomas testified at trial that he was shot four times: "Got two hole coming out my back. Shot four times. And another one right here that came out my leg and took one of my [testicles]."

After collecting physical evidence from the scene, Investigator Soucie spoke with Lieutenant H.D. Alexander, Jr. ("Lieutenant Alexander"), requesting identification of "Fats." Lieutenant Alexander consulted Corporal Pearsall of the Durham City Police Department gang unit. Corporal Pearsall, who did not testify at trial, advised Lieutenant Alexander that defendant had the nickname of "Fats." After locating photographs of defendant, Investigator Vernon Harris ("Investigator Harris") prepared a photographic lineup at Investigator Soucie's request. At the hospital, Investigator Harris showed the lineup to Thomas, and Thomas identified defendant's

photograph as that of the assailant. On 22 September 2005, Investigator Harris showed Bagby the photographic lineup at the police station, and Bagby also identified defendant's photograph as that of the assailant.

On 12 December 2005, defendant was indicted for robbery with a dangerous weapon, assault with a deadly weapon with intent to kill inflicting serious injury, and possession of a firearm by a felon. On 28 July 2006, a jury found defendant guilty of all charges. The trial court consolidated the assault and robbery charges and sentenced defendant to 100 to 129 months imprisonment, to be followed by a sentence of twelve to fifteen months for the possession of a firearm conviction. Defendant gave timely notice of appeal.

[1] Defendant first contends that the trial court erred in ordering him to pay restitution in the amount of $40,588.60 on the grounds that the court failed to consider defendant's resources as required by North Carolina General Statutes, section 15A-1340.36(a). We disagree.

Pursuant to section 15A-1340.36(a),

[i]n determining the amount of restitution to be made, the court shall take into consideration the resources of the defendant including all real and personal property owned by the defendant and the income derived from the property, the defendant's ability to earn, the defendant's obligation to support dependents, and any other matters that pertain to the defendant's ability to make restitution, but the court is not required to make findings of fact or conclusions of law on these matters. The amount of restitution must be limited to that supported by the record, and the court may order partial restitution when it appears that the damage or loss caused by the offense is greater than that which the defendant is able to pay. . . .

N.C. Gen. Stat. § 15A-1340.36(a) (2005). Although section 15A-1340.36(a) does not delineate the burdens of proof with respect to an award of restitution, we agree with the analogous federal provision:

Any dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence. The burden of demonstrating the amount of the loss sustained by a victim as a result of the offense shall be on the attorney for the Government. The burden of demonstrating the

**STATE v. TATE**

[187 N.C. App. 593 (2007)]

financial resources of the defendant and the financial needs of the defendant's dependents, shall be on the defendant. The burden of demonstrating such other matters as the court deems appropriate shall be upon the party designated by the court as justice requires.

18 U.S.C. § 3664(e); *accord State v. Riley*, 167 N.C. App. 346, 349, 605 S.E.2d 212, 215 (2004) ("Because [the defendant] failed to present evidence showing that she would not be able to make the required restitution payments, we find no error.").

In reviewing restitution awards, "the amount of restitution recommended by the trial court must be supported by evidence adduced at trial or at sentencing. However, when . . . there is some evidence as to the appropriate amount of restitution, the recommendation will not be overruled on appeal." *State v. Cousart*, 182 N.C. App. 150, 154, 641 S.E.2d 372, 375 (2007) (internal quotation marks, citations, and alterations omitted). Additionally, we find a decision by the United States Court of Appeals for the Second Circuit instructive:

> The decision to order restitution is "a delicate balancing of diverse, sometimes incomparable factors, some of which not only lack certainty but may indeed be based on mere probabilities, expectations, guesswork, even a 'hunch.'" Because of the nuanced nature of the decision to impose restitution it makes little sense for an appellate court, significantly more removed from the case than the [trial] court, to scrutinize the decision closely. *A [trial] court must be given latitude in the formation of restitution orders in order to protect the victim's interests.*

*United States v. Porter*, 90 F.3d 64, 68 (2d Cir. 1996) (emphasis added) (quoting *United States v. Atkinson*, 788 F.2d 900, 902 (2d Cir. 1986)); *see also United States v. Fuentes*, 107 F.3d 1515, 1534 (11th Cir. 1997) ("This court takes the speculative nature of a sentencing court's prediction of an indigent defendant's future earnings into account by reviewing such determinations with a deferential standard." (citing *Porter*, 90 F.3d at 68)).[1]

In the case *sub judice*, defendant filed an Affidavit of Indigency, which provided that although he was unemployed, he also had no

---

1. The federal provision governing restitution factors echoes North Carolina General Statutes, section 15A-1340.36(a). Like our state trial courts, a federal district court must take into consideration when ordering restitution the defendant's (1) financial resources and other assets, (2) projected earnings and other income, and (3) any financial obligations, including obligations to dependents. *See* 18 U.S.C. § 3664(f)(2).

expenses or liabilities. The trial court also heard from defendant's counsel that

> [defendant] is 20 years old. He has lived in Durham at this point for approximately nine, ten years. He does have one child. Prior to him being arrested, [defendant] was working. He was working part-time at Duke University, if I'm not mistaken. He does have support in the community. His mother is present. His child's mother is present, as well.
>
> . . . .
>
> I would also request the Court to consider recommending work release, considering the large amount of restitution that's going to be required for this particular case . . . .

The trial court asked defendant twice if he wished to add anything, and defendant shook his head both times. The trial court then sentenced defendant, specifically noting that "a condition of work release is that [defendant] pay restitution." Although the trial court did not make specific findings of fact concerning defendant's ability to pay restitution, such findings are not required, *see* N.C. Gen. Stat. § 15A-1340.36(a) (2005), and it is clear from the record that the trial court considered defendant's financial ability to pay restitution.

The cases relied upon by defendant are readily distinguishable from the instant case. First, defendant cites to *State v. Smith*, in which this Court noted that "[t]he trial court did not consider *any* evidence of defendant's financial condition. The trial judge stated that he did not know whether defendant had a job." *Smith*, 90 N.C. App. 161, 168, 368 S.E.2d 33, 38 (1988) (emphasis added), *aff'd*, 323 N.C. 703, 374 S.E.2d 866 (1989) (per curiam). Conversely, the trial court in the case *sub judice* was aware of defendant's age, employment situation, and living arrangements. *See Riley*, 167 N.C. App. at 349, 605 S.E.2d at 215 (distinguishing *Smith* and noting that in *Smith*, "the judge did not even know whether the defendant was employed."). Defendant also relies upon *State v. Hayes*, in which the trial court ordered restitution in the amount of $208,899.00, notwithstanding

> evidence which showed that [the defendant] (1) earns approximately $ 800.00 a month bagging groceries and stocking food at Harris Teeter, (2) pays approximately $ 350.00 per month in child support, (3) lives with his mother and shares a car with her, (4) is deaf in one ear and hard of hearing in the other, (5) has recently

completed bankruptcy proceedings, and (6) has substantial medical problems, including a recent brain tumor.

*Hayes*, 113 N.C. App. 172, 174-75, 437 S.E.2d 717, 719 (1993). On appeal, this Court held that "common sense dictates that this defendant will be unable to pay this amount." *Id.* at 175, 437 S.E.2d at 719. Unlike the defendant in *Hayes*, however, defendant in the instant case "failed to present evidence showing that []he would not be able to make the required restitution payments." *Riley*, 167 N.C. App. at 349, 605 S.E.2d at 215 (distinguishing *Hayes*). The trial court twice asked defendant if he wished to add anything to what his counsel stated with respect to his financial situation. Defendant declined the trial court's invitations, and we cannot conclude that the record demonstrates and that "common sense dictates" that defendant is unable to pay $40,588.60 in restitution as ordered by the trial court. The record demonstrates that the trial court properly considered defendant's financial ability to pay restitution, and therefore, the trial court complied with the requirements under section 15A-1340.36(a). Accordingly, defendant's assignment of error is overruled.

**[2]** Defendant next contends that the trial court erred in allowing various law enforcement officers to testify about the assailant's and defendant's shared nickname of "Fats," when such information was provided to the officers by Corporal Pearsall, who did not testify at trial. Defendant argues that the admission of such testimony was inadmissible hearsay and violated his rights under the Confrontation Clause. We disagree.

"It is well-settled that *de novo* review is ordinarily appropriate in cases where constitutional rights are implicated." *State v. Thorne*, 173 N.C. App. 393, 396, 618 S.E.2d 790, 793 (2005) (citing *Piedmont Triad Airport Auth. v. Urbine*, 354 N.C. 336, 338, 554 S.E.2d 331, 332 (2001)). "A violation of the defendant's rights under the Constitution of the United States is prejudicial unless the appellate court finds that it was harmless beyond a reasonable doubt. The burden is upon the State to demonstrate, beyond a reasonable doubt, that the error was harmless." N.C. Gen. Stat. § 15A-1443(b) (2005). Additionally, to the extent defendant failed to object at trial to portions of testimony challenged on appeal, defendant assigns plain error to the admission of such testimony. Plain error is error "so fundamental as to amount to a miscarriage of justice or which probably resulted in the jury reaching a different verdict than it otherwise would have reached." *State v. Bagley*, 321 N.C. 201, 213, 362 S.E.2d 244, 251 (1987), *cert. denied*, 485

U.S. 1036, 99 L. Ed. 2d 912 (1988). Before we determine whether or not to engage in plain error analysis, we first must determine whether the admission of the testimony constitutes error. *See State v. Cummings*, 361 N.C. 438, 470, 648 S.E.2d 788, 807 (2007) ("[B]efore engaging in plain error analysis it is necessary to determine whether the instruction complained of constitutes error.").

"Under the Confrontation Clause of the Sixth Amendment, a defendant is guaranteed the right to effectively cross-examine a witness . . . ." *Thorne*, 173 N.C. App. at 396, 618 S.E.2d at 793 (citing *United States v. Abel*, 469 U.S. 45, 50, 83 L. Ed. 2d 450, 456 (1984)). In *Crawford v. Washington*, 541 U.S. 36, 158 L. Ed. 2d 177 (2004), the United States Supreme Court

> held that where testimonial evidence is at issue, it is only admissible based on a finding that the witness is unavailable for trial and that the defendant has had a prior opportunity for cross-examination. Where non-testimonial evidence is involved, however, the ordinary rules of evidence apply in regards to admissibility.

*State v. Ferebee*, 177 N.C. App. 785, 788, 630 S.E.2d 460, 462 (2006) (citing *Crawford*, 541 U.S. at 68, 158 L. Ed. 2d at 203). "Statements are testimonial if they were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *State v. Sutton*, 169 N.C. App. 90, 96, 609 S.E.2d 270, 275 (internal quotation marks and citation omitted), *disc. rev. denied*, 359 N.C. 642, 617 S.E.2d 658 (2005). Once this Court determines that a statement was testimonial, "[w]e [then] must determine . . . whether the trial court properly ruled the declarant was unavailable[] and . . . whether defendant had an opportunity to cross-examine the declarant." *State v. Allen*, 171 N.C. App. 71, 74-75, 614 S.E.2d 361, 364-65 (internal quotation marks and citation omitted), *appeal dismissed and disc. rev. denied*, 360 N.C. 66, 621 S.E.2d 878 (2005).

Here, Investigator Soucie testified that Lieutenant Alexander advised her "about Fats's identity as being Javonnie Tate," and defendant objected on hearsay grounds. The trial court overruled the objection but issued a limiting instruction, instructing the jury to "consider that statement for corroborative purposes only." Investigator Soucie also testified, without objection, that she spoke directly with Corporal Pearsall "to corroborate the identity of Fats" and that Corporal Pearsall advised her that "Fats" was defendant.

Lieutenant Alexander later testified, without objection, that (1) Investigator Soucie asked him if he had obtained any information "about who might have done the shooting"; (2) he informed Investigator Soucie that he had been given a nickname of "Fats" for the assailant; (3) he advised Investigator Soucie that defendant had the nickname "Fats"; and (4) he came by that information through Corporal Pearsall.

Defendant contends that "the information provided by Corporal Pearsall to [Lieutenant] Alexander and eventually to the jury through [Lieutenant] Alexander and Investigator Michele Soucie was testimonial in nature and thus violative of the Confrontation Clause." Contrary to defendant's contention, however, Corporal Pearsall's statements to Lieutenant Alexander and Investigator Soucie do not constitute hearsay, a threshold condition for a *Crawford* and Confrontation Clause analysis. *See Crawford*, 541 U.S. at 59 n.9, 158 L. Ed. 2d at 198 (noting that the Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted"). As our Supreme Court has explained, " '[i]f a statement is offered for any purpose other than that of proving the truth of the matter stated, it is not objectionable as hearsay.' " *State v. Chapman*, 359 N.C. 328, 354, 611 S.E.2d 794, 815 (2005) (quoting *State v. Irick*, 291 N.C. 480, 498, 231 S.E.2d 833, 844-45 (1977)).

This Court recently found no Confrontation Clause violation when testimony by detectives referenced statements made by a confidential informant on the grounds that "the evidence was introduced to explain the officers' presence at the location of a drug sale, not for the truth of the matter asserted." *State v. Wiggins*, 185 N.C. App. 376, 383, 648 S.E.2d 865, 871 (2007) (citing *State v. Leyva*, 181 N.C. App. 491, 500, 640 S.E.2d 394, 399 (2007)). Much as in *Leyva* and *Wiggins*, the testimony in the instant case—*i.e.*, the testimony concerning Corporal Pearsall's identification of "Fats" as defendant— was not offered for the truth of the matter asserted but rather to explain subsequent actions undertaken by police officers during the course of the investigation. As noted in the direct examination of Lieutenant Alexander:

[PROSECUTOR]: So, basically, you were able to advise her who that person was?

[LIEUTENANT ALEXANDER]: Yes.

[PROSECUTOR]: And she was able to direct her investigation?

[LIEUTENANT ALEXANDER]: Yes.

Specifically, the testimony at issue was offered to explain defendant's inclusion in the photographic lineups presented to Thomas and Bagby, in which Thomas and Bagby both identified defendant as the assailant. As clarified in the direct examination of Investigator Soucie:

[PROSECUTOR]: And based on your conversation with Corporal Pearsall, what, if anything, did you do?

[INVESTIGATOR SOUCIE]: Created a photo array—two photo arrays, actually, photo array A and B, one to show the victim and one to show the witness.

The testimony about which defendant complains did not constitute hearsay and, therefore, did not constitute testimonial evidence in violation of defendant's rights under the Confrontation Clause. Accordingly, defendant's assignment of error is overruled.

Defendant's remaining assignments of error not set forth in his brief are deemed abandoned. *See* N.C. R. App. P. 28(b)(6) (2006).

No Error.

Judge WYNN concurs.

Judge Hunter concurs in a separate opinion.

HUNTER, Judge, concurring.

I agree with the majority's holding and conclusions and write separately only to expand on the discussion of a defendant's ability to pay restitution in relation to the award granted by the trial court.

The statute governing the calculation of restitution states as follows:

In determining the amount of restitution to be made, the court *shall take into consideration* the resources of the defendant including all real and personal property owned by the defendant and the income derived from the property, the defendant's ability to earn, the defendant's obligation to support dependents, and any other matters that pertain to the defendant's ability to make restitution, but the court is not required to make findings of fact

or conclusions of law on these matters. The amount of restitution must be limited to that supported by the record, and the court *may* order partial restitution when it appears that the damage or loss caused by the offense is greater than that which the defendant is able to pay. If the court orders partial restitution, the court *shall* state on the record the reasons for such an order.

N.C. Gen. Stat. § 15A-1340.36(a) (2005) (emphasis added). While the statute makes mandatory the court's consideration of a defendant's resources and ability to pay, it simply permits the court to order partial restitution where it appears the defendant cannot pay the full amount. That is, while the court is required to consider the defendant's ability to pay, it is *not* required to modify the restitution amount on that basis. Indeed, if it does so modify the amount, it is required to specifically state its justification for so doing.

Further, the purpose of ordering that an injured party be paid restitution is surely to make the victim whole[2] again in terms of economic loss. Although our case law does not explicitly state this purpose, a great many other states that have considered this concept have. *See, e.g., Fore v. State*, 858 So. 2d 982, 985 (Ala. App. 2003) (" 'one of the purposes of restitution is to make the victim whole' "); *Dorris v. State*, 656 P.2d 578, 584 (Alaska App. 1982) ("the purpose of the restitution statute is to make the victim whole"); *State v. Reynolds*, 832 P.2d 695, 698 (Ariz. App. Div. 1 1992) ("a trial court is required to determine the full amount of the victim's loss to make the victim whole"); *Simmons v. State*, 205 S.W.3d 194, 197 (Ark. App. 2005) ("[t]he purpose of restitution is to make the victim whole with respect to the financial injury suffered as a result of the victim's crime") (emphasis omitted); *Cumhuriyet v. People*, 615 P.2d 724, 726 (Colo. 1980) ("[r]estitution . . . is intended to make the victim whole"); *Gonzalez v. State*, 948 So. 2d 892, 895 (Fla. 2007) ("the trial court is granted discretion in determining a restitution amount to make the victim whole"). The only way to truly make victims whole under this statute is to calculate the amount of restitution to reflect the victim's economic loss. Modifying that amount based on a defendant's ability to pay transfers focus from the damage done to the victim to the defendant's financial concerns.

---

2. As in this Court's previous holdings, the term "whole again" here refers to remuneration for economic damages such as medical bills and loss of wages, not compensation for pain and suffering. *See, e.g., State v. Wilson*, 158 N.C. App. 235, 241, 580 S.E.2d 386, 390 (2003) (concluding that "pain and suffering is an impermissible basis for restitution" under the applicable statutes).

STATE v. TATE

[187 N.C. App. 593 (2007)]

Take for example a victim who is assaulted and has medical and expenses and loss of income totaling $50,000.00. At the time the restitution award is calculated, the defendant has zero or a token amount of assets or income. If the award is calculated based primarily on his ability to pay, the restitution award will be set at zero or, at best, a minor sum. Five years later, when the defendant is released from prison, he finds employment with an annual salary of $50,000.00, or inherits $500,000.00 from a relative, or otherwise obtains a substantial amount of money in a lump sum or steady stream. It would be patently unfair for the defendant to have all these assets but not allow the victim to recover from the defendant. The victim could theoretically sue to pursue those assets, but at that point the statute of limitations would have run; regardless, the victim should not have to again bring suit or risk losing her rights, given that she has already been to court when restitution was originally set in the criminal case.

Thus, the clear language of the statute and the policy reasons behind its creation both show that a defendant's ability to pay should be of secondary concern in calculating the amount of restitution to be paid. As such, I believe the best practice is for courts to calculate the amount of restitution based *primarily*, though not *solely*, on the victim's economic loss.

A restitution award based in large part on a defendant's ability to pay deprives the award of any semblance of actual restitution. I believe the legislature intended that courts should consider calculating restitution awards to reflect the full amount of economic damage done. If the courts focus on a defendant's ability to pay on the day of the judgment, most victims will receive little to no money as restitution. I do not interpret that to be the intent of the Legislature.

I agree with the majority that the federal statute 18 U.S.C. § 3664(e) is instructive on this point, providing as it does that "[t]he burden demonstrating the financial resources of the defendant and the financial needs of the defendant's dependents, shall be on the defendant." I believe further that the duty of the trial court is simply to consider all evidence presented by a defendant concerning his ability to pay, but not to seek out and demand that evidence where a defendant does not produce it.

This Court has on the same date produced two opinions[3] on this point of law. For the sake of clarity and consistency, I believe the

---

3. *See State v. Person*, 187 N.C. App. 512, 653 S.E.2d 560 (2007).

issue of restitution to a victim by the defendant merits review by our Legislature.